Moncure, P.,
delivered the opinion of the court. After stating the case he proceeded:
The appellants assign five errors in the decrees appealed from; which assignments will he here stated and'disposed of in the order in which they are made.
1. It is contended by the appellants that the lands of John Lewis, deceased, in the hands of his children, to whom he had given them; are protectéd from liability for the debt claimed in this suit against his estate by the appellee, thé personal representative of E. T. Overby, deceased,"by the 16th section of chapter 146*of the Code of 1873,'page 1001, which declares that -“no gift, conveyance, •assignment, transfer or charge, which is not" on consideration deemed valuable in Taw,’shall be avoided either in whole or in part, for that' cause only, unless within five years after it is made, suit be brought for that purpose, or the subject thereof, or some part of it, be dis-trained or levied upon, by or at the suit of a creditor,-as to whom such gift, conveyance, assignment, transfer or charge'is declared to be void by the second section of the 114th 'chapter.” ' ‘
To bring this transaction between John Lewis arid his children within the operation of this-statute,it is insisted: first, that this was a paroP'gift'inthe lifetime of - the said Johii Lewis;' and' second; if This' be: no'f trúe, that’ the *615 devise made by John Lewis to his children of the lands is such a gift as is contemplated by this statute.
To support the first of these positions, it is alleged that John Lewis in his lifetime, and shortly before his death, divided his property, or most of it, among his children, and put each in possession of the portion intended for him; and that these children continued to hold this property during, his lifetime, a period of less than one year from the date of the alleged gift; and that he died leaving a will, in which he devised to his said children the respective lands and personalty which, they say, were given to them in his lifetime, which -will, they contend, is a confirmation of the parol gift.
It is not pretended that there was any gift of the said property, or any part of it, from the said father to his children by conveyance or other, written instrument made and perfected in his lifetime; or that there is or ever was any other evidence of any such gift than the will itself. If such a gift can be established, it can only be by inference from the will itself, in connection with the fact that shortly before the testator’s death he put his children in possession of the property, real and personal, or most of it, which he intended to give to them respectively by his will. He made no contract, and had no understanding with them on the subject, much less one founded on a valuable consideration, or such a one, as a court of equity would enforce. He might, at any time during his life, after the execution of his will, have altered it at his pleasure, in any or every respect. If he had made a parol gift of his lands in his lifetime, it would have been .ineffectual under our statute, which decrees that “no estate of inheritance or freehold, or for a term of more than five years, in lands, shall be conveyed unless by deed or will.” Code, ch. 112, § 1, p. 887. As is truly said in the argument of the-.learned counsel for the appellees, the authorities are uniform to the effect *616 that'lands cannot pass in Virginia by parol gift, but only, by descent, adverse possession, deed or will. Clarke v. McClure, 10 Gratt. 315-16. And certainly, under the circumstances which existed in this case, no such equitable rights were acquired by the donees as entitled them to a conveyance of the legal title, on the principle of the cases cited in the said argument from 1 John. C. R. 500; 1 Cow. 733; 1 Hill Chy. 51; 1 Marsh. 87; 4 Bibb, 186. It is no uncommon thing for a father, after making his will, and thereby distributing his estate among his children, to place them in possession of the property so given, or part of it, shortly before his death, without intending thereby to part with his title to it or control over it, or power to dispose of it at his pleasure, during his life or at his death. And such seems to have been the case in this instance. That the two children who qualified as their father’s executors considered the whole estate devised and bequeathed by his will to be his at his death, is shown by their giving a bond as his executors in the penalty of $50,000.
The second position of the appellants under the first assignment of error is, that a will is embraced by the provisions of § 16, ch. 146 of the Code, p. 1001; and they insist that because the appellee did not file his bill to subject these lands within five years after the death of the testator, John Lewis, that the bar of this statute applies to the claim.'
The said provisions of the Code must be construed in connection and pari materia with the second section of chapter 114 of the Code, page 896, which is headed “Voluntary Gifts,” and is in these words:
“2. Every gift, Conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law .shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account merely, be void as to creditors *617 whose debts shall have been contracted, or as to purchasers who shall have purchased after it was made; and though it be deemed to be void as to a prior creditor, because voluntary, it shall not, for that cause, be decreed to be void as to subsequent creditors or purchasers.”
The 16th section df ch. 146 of the Code must be construed, as if it immediately followed in the same chapter, section 2 of chapter 114 aforesaid, as it would have done but for its being considered as more properly belonging to chapter 146, concerning “ limitation of suits.” There is a close resemblance in the language of the two sections. Section 2 of ch. 114 commences thus: “Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law shall be void,” &c. Section 16 of ch. 146 commences thus: “bfo gift, conveyance, assignment, transfer or charge, which is not on consideration deemed valuable in law, shall be avoided,” &c. The two sections were introduced into the Code at the same time, under the same circumstances, and as parts of the same purpose. They were not in the Code of our statute law before the revision of 1849, but made their appearance for the first time in the Code of that year. They were not in the Code of that year as reported by the revisors; but were amendments made thereto by the joint committee of revision, and adopted by the legislature. See the report, pp. 612 and 745; and the said amendments, pp. 141 and 161. About the time of that revision, or shortly before, much controversy existed among our judges and lawyers as to when and how far a deed was void as to creditors of the grantor, merely on the ground of its being voluntary. Hutchinson v. Kelly, 1 Rob. R. *618 123; Bank of Alexandria v. Patton, Id. 499; Hunters v. Waite, 3 Gratt. 25.
It was to settle this controversy and malee the law on the subject plain, that these amendments were made. While they declared “ every gift,” &e., void, they required that a suit to avoid such a gift should be brought for that purpose within five years after it was made. They related only to gifts inter vivos,¡and not to devisees. The whole estate of a deceased debtor, real and personal, is bound for the payment of his debts, whether he die testate or intestate. In the latter case, his heirs-at-law succeed to his real estate, subject to the payment of his debts. In the former case, his devisees, to the extent to which he may have devised his real estate, can only take it subject to the payment of the claims of his creditors, to. the extent to which a sale of the land devised may be necessary for such payment. A debtor cannot, by his will, impair the rightful claims of his creditors against his estate.
The court is, therefore, of opinion that the said first assignment of error cannot be sustained :
2d. The second assignment of erroris,that if adecree is proper against these lands at all, it should have apportioned this debt among the several devisees, and provided that upon payment of such proportion by each devisee, the lands of such devisee so paying should be protected from further liability, unless upon a sale of the lands of the delinquent devisees there should be a deficit.
It is true that the third section of chapter 127 of the Code clearly subordinates and postpones- the devise to the claims of creditors, and makes the whole of the property devised chargeable with the payment of the testator’s debts. But it is equally true that unless the will direct otherwise, and it does not in this *619 case, the land devised is primai’ily liable according to its value, and the burden of the testator’s debts, or such part of it as devolves on his devised lands, falls on the devisees in proportion to the value of the lands devised to them respectively. / The whole of his estate is liable for the payment of his debts, and if necessary for their payment, the creditors may subject all to that purpose to the total exclusion of his devisees and legatees. But if the whole of it be not necessary for that purpose, equity will require the burden to be laid upon the estate in such a way and in such proportions as to do no injury to the devisees and legatees, pi’ovided that can he done without doing injury to the creditors or subjecting them to unreasonable delay. And that can always be done where, as in this case, all the parties interested in the subject are before a court of equity, in a suit in which the mattet is involved, and the means of making an apportionment of the burden are readily at hand and can be used without injury or material delay to the creditors. Of course the whole estate is liable for the debts, and may be resorted to until they are completely paid. Equity only regulates and controls the manner and order of making such resort so as to prevent injury to devisees and legatees by taking from them what is not necessary for the payment of debts if the burden of them be properly adjusted.
Eo doubt all the devised lands are liable for the payment of the debts of the testator, but surely each devisee should he allowed to save from sale, if possible, the land devised to him by paying his ratable share of the debts, as among the devisees themselves each is liable for apart of the debt proportioned to the value of the land devised him. If he pay more, or his lands are sold to pay more, he certainly has the right to call on hié co-devisees for contribution. But *620 why sell his lands, and perhaps deprive him of a home, and then turn him around on the others to get his money, which probably would not. compensate him for his loss, for the loss of a home is ofte*n irreparable ? . Tt is the constant course of equity so to administer justice -as to prevent multiplicity .of suits and circuity of action, save costs, and put an end to litigation. The case of Mason's devisees v. Peter's adm'rs, 1 Munf. 427, referred to in 2 Rob. Pr. (old ed.) 89, seems to be directly in point Akin to it is the ease of Mayo v. Tomkies, 6 Munf. 520, 528. Upon like principles was the decision, in part, of the case of Horton v. Bond & others, 28 Gratt. 815. See what is said on pp. 825, et seq., and so much of the decree on pp. 829, 830, as relates to this subject. The last-named case, in which the opinion of the court was delivered by Judge Burks, presented the question of equities among sureties, and the court respected those equities in giving relief to the creditor. The principle is the same in all the cáses, to-wit: that'where there is a common burden, and the parties liable are all before the court, equity will apportion the burden in the first instance according to the rights and liabilities of the parties, provided that can be done without prejudice to the creditor, who has a claim on all. ^It can be done and should have been done in the present case. /The objection is not removed by the provision in the decree, that the commissioner “ shall sell such part or parts of said real estate as may be selected for the purpose by said devisees.” The devisees might not agree as to the selection or as tó the value of their respective devises, and each would be in the power of the other. Besides, some have sold nearly all th'eir lands.
The principles just laid down are strongly applicable to this case, in which there is but one debt due by the testator’s estate, which was a suretyship debt that he *621 doubtless had not the remotest idea of ever having to pay, and had doubtless forgotten when he wrote his wTill, and his devisees never heard of until about seven years after his death, when, for the' first time, it was claimed against his estate and an action of debt was brought therefor against his executors, long after they had in good faith fully administered his estate, without any idea of the existence of the debt now claimed against it, or any other debt for which it could possibly be liable. The creditor was no doubt aware of what they were doing, and yet asserted no claim against the estate until about the time he brought the action aforesaid; perhaps because he expected to receive payment of the principal debtor until he became a bankrupt, which may have been shortly before said action against the executors of the surety was instituted. But however that may have been, the case was a very proper one for the application of the principles aforesaid.
The court is therefore of opinion that the second assignment of error is well founded, and the decrees appealed from are erroneous on the ground relied on in that assignment.
3d. The third assignment of error by the appellants is, that they are entitled to a large sum from their father with which he was chargeable as their guardian; that they have not released said -claim or waived their right “to an account to show how they stood affected in the actual state of the case, that they might make an intelligent election, whether to accept the devises under the conditions annexed to them, or to assert their claims on their guardian,” &c.
The court is of opinion that whether the devises made by the testator to his children can be properly said to have created a case for an election by them between the said devises and their claims against him as their guardian, or to have been a case of devises on condition that *622 the devisees release and relinquish all claim that they might have had against their father as their guardian, is an immaterial question in this case, and that it is perfectly clear that in the former view they elected to accept the devises as a full satisfaction of any claim they might have had against their father as their guardian, and in the latter view they accepted'the devises on the condition on which they were made, and in neither view can any claim be now asserted by them against the estate of their father on account of his guardianship for them. They, in fact, accepted the devises in bis lifetime, possessed them for about a year before his death, and have continued to possess them ever since, until they sold portions of them, and never pretended to set up any claim on account of said guardianship until they filed their answers in this case, on the 26th of November, 1877, although the testator died more than eleven years before, in 1866, and action was brought against his executors for the debt now in controversy on the 18th of -March, 1873.
The court is therefore of opinion that there is no error in the said decrees on the ground stated in the said third assignment of error.
4th. The fourth assignment of; error is as- to the personal decree against the executors, John T. Lewis and R. JB. Lewis, for a devastavit of the assets of their testator; in which it is insisted that there should have been no personal decree against them until a decree was had against the legatees, to whom those executors paid money of the estate and turned over certain personal prop:.; Ly of the testator.
There can be no doubt but that these executors were personally liable, as for a dcuasta,vit, for the amount thus decreed against them; nor can there be any but that they are entitled to have recourse over against the legatees to whom they had paid the same amount. If they *623 Lad, as they might and ought- to have done, required and taken refunding bonds, with good security, according to law, from the legatees on making such payment, the only recourse of the creditor of the estate for his debt would have been upon such bonds. As they did not take such bonds they remain liable to the creditors, but have their recourse over against the legatees to whom they paid the money. 13ut as bdth executors and legatees are before the court at the suit of the creditor, why not settle the matter by one decree instead of two; or, to use a common but expressive phrase, “why not put the saddle directly on the right horse”? This would accord with the principles of equity before referred to. If the decree against the legatees should be unavailing in whole or in part, the executors would of course remain personally liable for the deficiency, and there would be a decree over against them therefor. All the risk the creditor would run by this operation would be that of incurring a little delay in getting his money; and he could not justly complain of that, under the circumstances. He would have incurred the same if the executors had, as they might have done, taken and returned a refunding bond with security. They acted in good faith in settling with the legatees and requiring no refunding bond; believing, and having the best cause to believe, that their testator owed no debt. On the other hand, the only creditor of the estate failed to assert or give any notice of his claim until seven years after the testator’s death.
The court is therefore of opinion that the fourth assignment of error is well founded.
5th. The fifth and last assignment of error is that the plaintiff, John A. Coke, was appointed, and authorized to act alone, as a commissioner to sell the lands of the said devisees in execution of the decree; and that the penalty of the bond required of him—$1,500—was in *624 adequate; the debt for which the. sales were to be made exceeding $5,000.
The case of Teel & als. v. Yancey & als., 28 Gratt. 691, is an express authority for the action of the circuit court in appointing the plaintiff, John A. Coke, and authorizing him to act alone as a commissioner, to sell the said lands in execution of the decree; and there is therefore no error in the action of the court in that respect. Uor is there any error in the said decree in regard to the penalty of the bond, which does not appear to have been inadequate. It appears that the amount necessary to be raised by said sale will probably be about $2,500, one-third of which was required to be paid in cash—that is little upward of $800. The penalty of the bond was fixed in reference to that amount, and would seem to have been adequately fixed at $1,500.
The court is therefore of opinion that so far as the decrees appealed from do not conform to the foregoing opinion they are erroneous, and ought to be reversed and annulled; and that the residue thereof ought to be affirmed, and the cause remanded for further proceedings to a final decree in conformity with the foregoing opinion.
The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that although the appellants, John T. Lewis and R. B. Lewis, are chargeable with the sum of $1,462.50, with interest from the 1st day January, 1867, by the said decree of the 4th day of July, 1878, decreed to be paid by them to the appellee, John A. Coke, administrator de bonis non of R. T. Overby, deceased, on account of his judgment against the said appellants as executors of John Lewis, deceased ; the said executors having committed a devas *625 tavit'm paying and distributing the said sum of-money to and among the legatees of their said testator when it was first liable to the payment of the said judgment, or the debt for which it wás obtained. Yet, as the said executors made such payment and distribution in good faith, and without knowledge of the existence of the said debt, they are entitled to have their recourse over against the said legatees for the amount so paid to and distributed among them, with interest from the time of such payment and distribution ; and as the said legatees as well as the said executors are all parties to the suit, the said circuit court, instead of rendering a decree first in favor of the said appellee against the said appellants, and thereafter in favor of the said appellants against the said legatees for the said sum of money' and .interest, ought to place the burden directly on the shoulders of those who ought ultimately to bear it, and in the proportion in which they ought so to bear it respectively. And if the decree to be' so rendered against them should prove ineffectual, in whole or in part, then there may and ought to be á decree in favor of the said appellee against the said appellants for the said sum of money and interest, or so much thereof as may not have been recovered and received of the said legatees as aforesaid.
And the court is further of opinion that although the real .estate which was devised by the said testator, John Lewis, to his devisees respectively, or so much thereof as has not since his death and before the institution of this suit been sold by them or any of them to bona fide purchasers for value and without notice, still remains bound and liable for the said judgment in favor of the said appellee, which amounts to $4,938.47, including interest to the 25th day of Eo *626 vember, 1877, with interest on the principal sum thereof from that day till payment, and his costs of -..said suit, subject to a credit for the amount which may be realized by the said appellee on account of the said judgment out of the personal estate of the said testator as aforesaid; yet, instead of directing a sale of said real estate, as was done in the said decree of the 4th day of July, 1878, the said circuit court ought to have the balance due upon the said judgment and costs, after applying the said credit, apportioned among the said devisees according to the value of their respective devises and bequests at the date of the death of the said testator. And if the said devisees fail to pay to the said appellee in a reasonable time, to be prescribed by the court, their respective portions of the said balance according to the said apportionment, then the real estate which may have been devised by the said testator to such of the said devisees as may be in default as aforesaid, or such part thereof as may remain unsold to a bono, Jide purchaser for value and without notice after the death of the said testator and before the institution of this suit, or so much of the said real estate as may be sufficient to pay the said portions of the said devisees in default as aforesaid respectively, ought to be decreed to be sold for that purpose. And if the real estate devised to any of the said devisees, and remaining unsold as aforesaid, shall be insufficient to pay their respective portions of the said balance according to the said apportionment, then there may be a personal decree to the extent of such deficiency against the said devisees respectively, not to exceed, however, the amount received by them for land devised to them, and sold after the death of the testator and before the institution of this suit as aforesaid. But should any such personal decree be unavailing, in whole or *627 in part, the amount as to which it may be unavailing ought to be apportioned among the remaining devisees, and the real estate devised to them respectively, and not required for the payment of their respective portions of the said balance, ought to be held liable for the payment of their respective portions of the amount as to which such personal decree may be unavailing as aforesaid. And so on until the entire debt due to the said appellee, including interest and costs as aforesaid, is fully satisfied, or the real estate devised by the said testator and remaining unsold as aforesaid, is exhausted in the payment of the said debt, interest and costs. The whole of the said real estate being liable for the payment of the said debt, though it is considered just and equitable under the circumstances of this case that such liability should be in the manner aforesaid, all the parties concerned being before the court, such adjustment can be effected in a reasonable time, and whatever delay may occur thereby, being occasioned by the laches of the only creditor of the estate in the assertion of his claim against it.
The court is further of opinion that the decrees appealed from are erroneous, so far as they conflict with the foregoing opinion and decree', but are not erroneous so far as they are consistent with the same. Therefore it is decreed and ordered that so much of the said decrees as are above,declared to be erroneous be reversed and annulled, and the residue thereof affirmed, and that the appellants recover of the appellee, John A. Coke, administrator with the will annexed of E. Y. Overby, deceased, their costs by them expended in the prosecution of their appeal aforesaid here, to be levied of the estate of his said testator in his hands to be administered. And it is further de *628 creed and ordered that this cause be remanded to the said circuit court to be further proceeded in to a final decree, in conformity with the foregoing opinion and decree; which is ordered to he certified to the said circuit court of Mecklenburg county.
Decree reversed in part.