Baldwin, J.
I am well satisfied, from all the circumstances of the case, that it was the intention of *298 Blessing to sell, and of Beatty to purchase, the land embraced by the mortgage deed, according to the true boundaries, whatever those might be, and adopting the estimate of quantity expressed in that deed, to wit, 280 acres. but that a mistake occurred in .relation to the boundaries, occasioned by errors in the deed from the commissioners to Blessing, and an unfortunate attempt to correct those errors without resorting to the calls of the mortgage deed. The consequence has been that the deed from Blessing to Beatty embraces some land not conveyed by the mortgage deed, to which Blessing had no colour of title, and omits some comprised in that deed, to which there does not appear to have been any adverse claim. The decree of the circuit court very properly corrected the mistake, by directing a conveyance from the heirs of Blessing according to the calls of the mortgage deed. The corrected boundaries contain only 253 acres, shewing a deficiency of 27 acres: and the questions presented for our consideration upon the merits are, whether compensation ought to be made for that deficiency, and if so, what should be the measure of compensation?
The principle upon which equity gives relief in cases of deficiency or excess in the estimated quantity upon the sale of lands, I understand to be that of mistake ; whether the mutual mistake of the parties, or the mistake of one of them, occasioned by the fraud or culpable negligence of the other. I do not perceive any other principle upon which the jurisdiction can be founded; for if there has been no mistake, either in the contract itself or the execution of the contract, the parties must stand upon their legal rights, to be adjudicated and enforced in a legal forum, unless the question should arise incidentally in a court of chancery, in the exercise of some other branch of its jurisdiction. The principle was recognized in Hill v. Buckley, 17 Ves. 394. 401. Glover v. Smith, 1 Desaus. 433. and Duvals *299 v. Ross, 2 Munf. 290. It was the expressed and sole ground of decision in Quesnel v. Woodlief. That case, though commented upon and approved in Jolliffe &c. v. Hite &c. 1 Call 301. was for some time misunderstood and questioned, 5 Call 9. 10. 2 Rand. 67. from the want of a correct report of it; (see an imperfect one in 2 Hen. & Munf. 173. note.) but it is now well and accurately reported in 6 Call 218. and its authority no longer disputed, but recognized; Bierne &c. v. Erskine, 5 Leigh 64. The cases of Nelson v. Matthews &c. 2 Hen. & Munf. 164. and Hull v. Cunningham's ex’or, 1 Munf. 330. must have been founded upon the same principle. The idea is sometimes adverted to, of a tacit warranty annexed to every contract, that the thing bought or sold shall correspond with the representation made of it at the time, 5 Call 5. but this is only another mode of suggesting the same principle, and imports nothing more than the duty of one party to correct a mistake to which he has been instrumental, committed to the prejudice of the other. In the application of the principle, it is wholly immaterial whether a deficiency arises from a miscalculation of the area within the boundaries, as in Duvals v. Ross, or the exclusion by the described boundaries of a part of the tract sold, as in Hull v. Cunningham’s ex'or, or the exclusion of a part unquestionably belonging to a third person, as in one aspect of Nelson v. Matthews &c.
The cases proper for compensation on account of deficiency or excess are of three classes. The first I will mention is that of a sale by the acre, by the express terms of the contract; for example, the sale of a tract stated at 1000 acres, for the price of five dollars per acre. Here the quantity mentioned is manifestly mere matter of description, or conjectural or temporary estimate ; either party having a perfect right to ascertain accurately the precise quantity by actual admeasurement ; which quantity, when so correctly ascertained, *300 gives infallibly, by the application of the stipulated price per acre, the exact amount of the purchase money. But if the parties, relying too much upon the estimated quantity, go on to adjust the consideration by that cri¿er;or3) ancl turns out that the estimate is erroneous, the mistake is undoubtedly one which must be corrected. In such a case, the mistake is not in the terms of the contract, but in the result of those terms when applied to the subject. The parties may, however, by their agreement, make the estimated quantity conclusive, by stipulating to dispense with a survey and to be governed in all events by the given estimate. This changes the sale into a contract of hazard, and necessarily excludes the interposition of equity on the ground of mistake.
A second class of cases is where the agreement or understanding of the parties is for a sale at a stipulated price per acre, but instead of stating those terms in the contract, they express, as the consideration, the result of a calculation based upon an erroneous estimate of the quantity. Here the mistake is in the terms of the contract, a gross sum having been adopted under the belief of its being the aggregate of the agreed price per acre. In such cases, also, the right to relief, otherwise clear, may be excluded by a stipulation that the estimated shall in any state of facts be taken as the actual quantity ; the parties thus contracting for an anticipated hazard.
The third class of cases is where the parties contract for the payment of a gross sum for a tract or parcel, upon an estimate of a given quantity, which influences the price agreed to be paid. Here there is no mistake in the terms of the contract, nor in the application of those terms to the subject, but in an important element of the contract, which, if correctly understood at the time, would in all probability have prevented the contract from being made, or haye varied its terms. That *301 such cases require relief in equity, is well established; Hill v. Buckley, Glover v. Smith, Quesnel v. Woodlief, and Duvals v. Ross, above cited; to which may be added Bierne &c. v. Erskine, 5 Leigh 59. and the authorities cited by judge Lyons in 1 Call 316. The proper relief is to set aside the contract, or to give a just compensation, such as will place the parties in the same relative situation in which they would probably have placed themselves, if the true state of the fact had been known W’hen they made their agreement. In this, however, as in the other classes of cases, the relief being founded upon a mistake unprovided for, it is repelled by shewing that it wms anticipated as probable, and provided for by an agreement that the contingency should be a matter of hazard.
This is briefly my view of what I consider the correct doctrine on this subject; over which it is true there is some obscurity, attributable, as I conceive, not so much to a difference of opinion in regard to the principles, as to an occasional want of accuracy and precision in the terms employed to express them; which has arisen in a great measure out of the use of the same words in different senses. Thus the word “ gross” is applicable as w’ell to the price as the thing sold, and “ a sale by the acre” has reference to both. But we must bear in mind that upon the question of compensation, the substantial distinction is between a sale that is a contract of hazard, and one that is not. When “ a sale in gross” is used as equivalent to a contract of hazard, the term is properly applicable not to the price but to the subject: for a sale by the acre may be a contract of hazard, and a sale for a gross sum may not. A sale in gross, when applied to the thing sold, means a sale by the tract without regard to quantity; and in that sense is (as was said by judge Cabell in Russell &c. v. Keeran &c. 8 Leigh 19.) ex vi termini a contract of hazard. In that sense, however, the distinction sometimes taken be *302 tween a sale in gross and a sale by the acre is too narrow ; inasmuch as, though a sale in gross, thus understood, is a contract of hazard, a sale by the acre may be so too: and this want of comprehensiveness in the d¡st,inC|;ion ¡s apt to beget a confusion of ideas, and lead us into error. Thus, when a sale for a gross sum is spoken of as a sale by the acre, because the quantity is not hazarded, two distinct classes of cases are confounded, and the absence of a provision regulating the price in the event of deficiency’or excess, substituted for an express provision which does regulate it; in other words, a mistake of the parties as to quantity, not provided for by the terms of the contract, is treated as identical with one which is provided for by the terms of the contract: for a sale at a given sum per acre carries out the intention of the parties, whether they are correct or mistaken in their estimate of the quantity; whereas a sale for a gross sum effectuates their intention, only where they are correct, and not where they are incorrect, as to the quantity. The inadequacy of the distinction tends to obscure the doctrine, and lead us away from the true ground of relief (the mistake of the parties) into delusive speculations as to the specific character of the contract. For example, where a given sum per acre is not an even quotient of the gross price stipulated, it cannot, as has been sometimes supposed, serve to shew that the sale is a sale in gross (understood as a contract of hazard), inasmuch as it may well have happened, not merely that there was no sale by the acre, but no estimate of the price per acre which the gross sum would give, and yet the gross price may have been influenced by the supposed quantity, by enhancing or diminishing the value according to an aggregate and not a distributive estimate.
The question of compensation usually arises (for reasons already suggested) not in sales by the acre, but in sales for a gross sum. In the latter cases, the enquiry *303 to be made in the first place is, whether the parties made a mistaken estimate of the quantity, which influenced the price; and then, whether, notwithstanding such mistaken estimate, they have waived the right to compensation, by an agreement of hazard. In the absence of all direct evidence, the safest general rule, I think, is, that an estimate of the quantity by the par-lies, whether in a contract executed or a contract executory, ought to be taken prima facie to have influenced the price; for quantity is usually an important element of the agreement, and can hardly be supposed to have been disregarded by the parties, or to have been unmeaningly stated by them in a solemn contract. As a mere matter of description in a conveyance, it is for the most part useless; and more emphatically so in an executory contract. That the statement of the quantity has not generally been regarded as a matter of indifference, is evident from the frequent introduction of the additional words “ more or less,” the habitual employment of which can be for no other purpose than to shew that the parties do not intend to bind themselves for the precise number of acres mentioned : and the effect which the courts have given to those words (which have been construed to cover only small deficiencies or excesses, attributable to variations of instruments and the like, and not important deviations, Quesnel v. Woodlief, 6 Call 218. Jolliffe &c. v. Hite &c. 1 Call 301.) illustrates the strong leaning of the courts against the inference of a contract of hazard; a construction which has moreover been expressly declared in several cases to be one that ought not to be favoured. Hundley v. Lyons, 5 Munf. 342. Keytons v. Brawfords, 5 Leigh 48.
In the case before us, the quantity is unequivocally and expressly stated at 280 acres, in the deed of conveyance from Blessing to Beatty, without even the addition of the customary words “ more or less;” and the articles of agreement between them evidence a sale of *304 « a certain tract or parcel of land containing 280 acres, called Staley creek place.” These terms, to my mind, furnish at least strong presumptive evidence against a contract of hazard; and I am aware of no circumgtanceg jn the cause, by which that presumption is rebutted. The case of Keytons v. Brawfords, 5 Leigh 39. relied on by the appellants’ counsel, is not like this. There, the claim to compensation was not for a deficiency within the boundaries contemplated bj' the parties, but for the loss of land out of those boundaries, not intended to be sold, and which had been long held by an adverse claimant under a good title; and the 'deviations in the deed were from the known boundaries by which the land was sold and had been long held, the parties being misled in the description of the boundaries by erroneous title papers. Here, the deviations were from the true, but not accurately known boundaries of a correct title paper, by which the parties intended to be governed. There, the statement of the quantity in the deed was not an estimate according to the known and contemplated boundaries, but an incident of the erroneous description of the boundaries. Here, the statement of the quantity in the deed corresponds with that in the correct title paper, and must have been a mistaken estimate from the true and contemplated boundaries. These points of difference between the two cases are sufficient for my purpose; and I need not notice the various other circumstances relied on in the case cited, and not existing here, tending to shew a contract of hazard. The case of Pendleton's ex'ors v. Stewart, 5 Call 1. is more like this; but that case turned upon the effect of the words “ more or less” in an executory contract, which, under the circumstances, were held to make a contract of hazard, upon the authority of Jolliffe &c. v. Hite &c. 1 Call 301. where a public sale by an executor for more or less, so distinctly understood, was held to be of that character. *305 I do not consider the authority of Pendleton's ex'ors v. Stewart as applicable to the case before us, which is very much like, and cannot be distinguished in principie from, that of Bierne &c. v. Erskine, 5 Leigh 59. where a purchaser was compelled to make compensation for an excess, upon an executory contract for the sale, at a gross price, of a tract stated in the agreement to contain 100 acres.
For the reasons above stated, I am of opinion that the decree of the circuit court was right in holding the representatives of Blessing liable for the deficiency of 27 acres. As to the measure of compensation, I think there can be no difficulty. If the deed from Blessing to Beatty had been correct in the first instance, it would have presented the case of a mere deficiency in quantity within the boundaries of the tract conveyed ; and such is the real nature of the case, after the correction of that deed according to the true boundaries. In such a case the general rule of compensation is according to the average value of the whole tract; and there are no particular circumstances here, requiring a departure from that rule.
The other objections to the decree require but little notice. There was no necessity for making the heirs of Campbell, the mortgagor, parties in the cause; he having. been divested, by the mortgage and the decree of foreclosure, of all title, legal and equitable. The joint decree de bonis iestatoris against Bowen and Jacob Blessing, as joint administrators with the will annexed of the vendor Blessing, for the value of the deficiency, when the pleadings indicated that Bowen was the sole administrator, is not an error of judgment, but a clerical misprision, which may yet be amended. And so the decree against the administrator Bowen, jointly with the other defendants, the heirs of Blessing, for costs de bonis propriis, was evidently not intentional, but a mere oversight, which might have been corrected, on motion, *306 by the court in which the decree was rendered, and which is still amendable. And the declaration contained in the decree, of the true boundaries of the tract, would by necessary implication relieve the heirs of ftiess{ng from any responsibility, .upon their ancestor’s warranty, for the land out of those limits, but comprised in the erroneous deed : but perhaps it would be more regular, and certainly cannot be improper, to direct a release from Beatty to the heirs of Blessing of the land thus improperly conveyed.
• Upon the whole, I am of opinion to affirm the decree of the circuit court with costs, after correcting it in the points above indicated.