# Richmond.

## LEE v. LAPRADE AND OTHERS.

March 14, 1907.

Absent, Keith, P.

1. EQUITY JURISDICTION—*Rescission*—*Mutual Mistake*—*Remedy at Law.*—Notwithstanding a vendee's right to proceed at law upon his covenants for title, he may, in cases of plain mistake and misapprehension in the description of the property conveyed which the vendor is unable to correct, and which is material in its character and of the very substance of the transaction, go into a court of equity and have the deed cancelled and the purchase money refunded.

2. INTEREST—*Money Paid by Mistake.*—Where a deed is set aside on the ground of mutual mistake in the description of the property conveyed, and a decree is rendered for the repayment of the purchase money paid, it should bear interest from the time when the mistake was discovered and demand was made for its return.

Appeal from a decree in chancery of the Circuit Court of Franklin county. Decree for defendants. Complainant appeals.

*Reversed.*

The opinion states the case.

*Don P. Halsey, J. E. Edmunds, Anderson & Lee* and *S. A. Anderson,* for the appellant.

*Dillard & Lee* and *C. A. McHugh,* for the appellee.

CARDWELL, J., delivered the opinion of the Court.

The Hyde Park Land Company, in the year 1888, acquired

title to a lot of land in the suburbs of the city of Roanoke, had a plat made of its property, laid it off into lots and streets, dedicating the streets to the city, and placed the lots in the hands of real estate agents to be sold. Some of these streets were only designated by a ploughed furrow on either side, but there does not seem to have been anything to indicate the boundaries of the lots. On the map they were indicated by sections and numbers. In 1890 the land company sold one of these lots to one Aunspaugh, trustee, and on January 31, 1890, executed to him a deed purporting to convey the lot, in which deed the boundaries were described as follows: "Beginning at a point on the south side of Loudoun avenue 400 feet west of Thirteenth street; thence with Loudoun avenue north 68 degrees 45 minutes west, 52 and seven-tenths feet to a point; thence south 25 degrees west, 130 and three-tenths feet to an alley; thence with the said alley south 68 degrees 45 minutes east, 62 feet to a point; thence north 21 degrees 15 minutes east, 130 feet to the place of beginning."

Aunspaugh, by deed bearing date June 25, 1890, conveyed the said lot to George W. Laprade, the description being the same as that in Aunspaugh's deed from the land company. Laprade placed the lot in the hands of one J. F. Wingfield, a real estate agent (who was also a stockholder in the land company), who sold it to C. A. Lee for the sum of $700, and Laprade and his wife conveyed the lot to Lee by deed bearing date October 17, 1890, in which deed it was described identically as in the two aforementioned deeds, with the further recital that it was the same lot conveyed in those deeds. Laprade is a resident of Franklin county and Lee a resident of Lynchburg, Va.

After purchasing this lot Lee instructed certain real estate agents in Roanoke to sell it for him, but no sale was effected. It was in the summer of 1899, by correspondence, placed in the hands of one J. W. Boswell, a real estate agent, and after a further correspondence, continuing over a period of three years, Lee was informed that the lot described in his deed was square-

ly in Fourteenth street. Lee then made repeated efforts to get an amicable settlement of the matter with Laprade; but failing in this he instituted this suit for the purpose of rescinding the contract of purchase of the lot, and annulling the deed conveying the same to him, and for the recovery from Laprade of the purchase money he had paid for the lot, with interest thereon, etc.

The defendant, Laprade, demurred to the bill on the grounds that the plaintiff had a complete and adequate remedy at law, and that the city of Roanoke was not made a party defendant. The demurrer was sustained, but the plaintiff was allowed to file an amended bill, which he did, making the city of Roanoke, and Laprade's wife also, parties defendant, and setting out and alleging more definitely the circumstances constituting the mutual mistake under which Laprade and the plaintiff were laboring when the contract for the purchase of the lot was made. Laprade also demurred to this amended bill, which demurrer was overruled, and he thereupon filed an answer.

With his answer Laprade files and tenders to the plaintiff a deed bearing date June 4, 1904, purporting to convey from the land company and the defendants, Laprade and wife, the lot which Laprade claims that he in fact sold and intended to convey to the plaintiff, which deed, so tendered, conveys an entirely different lot from that conveyed to the plaintiff by the deed of October 17, 1890, to-wit: a lot with a different number and in a different section of the Rogers & Fairfax Addition to the city of Roanoke, and far from answering the description in the deed of October 17, 1890.

The answer of Laprade does not specifically deny the allegation of the amended bill that plaintiff believed that he was buying the lot described in his deed, and that Laprade believed he was selling plaintiff another lot than the one so described, thereby causing a mistake in the transaction concerning the purchase and sale of the lot, but claims that he, Laprade, through his agent, Wingfield, sold plaintiff another lot than the one described in

his deed, to-wit: a lot 50 feet west of Thirteenth street; and this is the lot which the deed tendered with the answer conveys, and to which deed Aunspaugh, trustee, was not a party.

Depositions were taken both for the plaintiff and the defendant, Laprade, certain letters and other writings being filed with the depositions as evidence, and upon the hearing of the cause the Circuit Court refused to rescind the contract as prayed for in the original and amended bills, and dismissed the bills with costs to Laprade, but authorizing the plaintiff to withdraw from the papers in the cause the corrected deed, tendered with the answer of Laprade, for the lot, which the court decided that the plaintiff had purchased. It is from this decree that the case is brought here on an appeal.

The city of Roanoke filed no answer, as its rights were admitted in the bills and also practically admitted by appellee Laprade's counsel, viz: that the land embraced in Fourteenth street had been dedicated to and was the property of the city of Roanoke.

It is contended on behalf of appellee that the Circuit Court was without jurisdiction to grant the equitable relief asked in the bills filed in the cause.

This court is of opinion that this contention is without merit.

In 4 Minor's Institutes (4th Ed.) 697, it is said: "In cases of plain mistake or misapprehension, though not the effect of fraud or contrivance, equity will rescind the conveyance, if the error goes essentially to the substance of the contract, so that the purchaser does not get what he bargained for, or the vendor sells that which he did not design to sell." On page 700 the same author says: "Thus, if A buys land of B, to which B is supposed to have a good title, and it turns out, in consequence of facts unknown alike to both parties, he has no title at all, equity will cancel the transaction and cause the purchase money to be restored to A, putting both parties *in statu quo*."

To the same effect is Story's Eq. Jur., page 160, *et seq.*

In *Home B. & C. Co.* v. *London*, 98 Va. 152, 35 S. E. 362,

it was held that "Where a grantor has made a mistake in the description of the property conveyed, which he is unable to correct, and which is material in its character and affects the very substance of the transaction, the grantee is entitled to have the deed cancelled and the purchase money paid refunded."

The relief sought in that case was very similar to the relief asked in this.

In *Rogers* v. *Pattie,* 96 Va. 498, 31 S. E. 897, it was held that "A vendee of real estate may go into a court of equity on the ground of mutual mistake and recover for land lost, notwithstanding he has the right to proceed at law on his covenants for title." In that case there was only a misdescription of the property conveyed, but the court refused to rescind the contract because the mistake made did not affect the very substance of the thing contracted for. There was included in the deed in that instance a part of the public highway, which the vendor had no right to sell or convey, but the portion of the land sold by him embraced in the public highway formed only a small part of the land actually sold, and did not materially affect the value of the land which the vendee actually acquired by the deed; therefore this court remanded the cause, with direction to the lower court to ascertain and allow the vendee just compensation for the land lost by superior title, the opinion saying: "It now being settled in this state that notwithstanding the vendee's right to proceed at law upon his covenants for title, he has the right to go into a court of equity upon the ground of mistake, and recover compensation. *Blessing v. Beatty,* 1 Rob. 287; *Boschen* v. *Jurgens,* 92 Va. 756, 24 S. E. 390, and *Hull* v. *Watts,* 95 Va. 10, 27 S. E. 829."

The remaining question is, whether upon the facts proved, the appellant is entitled to the relief asked in his bill and amended bill.

If Wingfield, the agent of appellee Laprade, did, as a matter of fact, show appellant the lot in Fourteenth street and sell it to him, as appellant claims, then he (Wingfield) admittedly did

so through mistake, and the contract should be rescinded and the purchase money restored to appellant, thus placing the parties *in statu quo,* especially in view of the fact that it appears that even if appellee Laprade's claim that he in fact sold appellant a different lot be true he does not tender to appellant with his answer a deed conveying a good title to that lot, inasmuch as the title to it came from Aunspaugh, trustee, to appellee Laprade, and Aunspaugh, trustee, is not made a party to the deed tendered. The deed (and only deed, so far as this record discloses) made by Aunspaugh, trustee, to appellee Laprade, conveys the lot in Fourteenth street, and conveys no interest whatever in lot No. 1, section 61, in the Rogers and Fairfax Addition to the city of Roanoke, which is the description of the lot conveyed by the deed tendered with Laprade's answer. The lot in Fourteenth street is unmistakably the lot described and conveyed in the deed from Laprade to appellant, and there is no denial of this fact; nor is there any denial of the fact that the land conveyed was prior to the conveyance dedicated to the city of Roanoke as a street. So that the land lost from the lot conveyed affected the very substance of the thing contracted for by appellant, and not merely an immaterial part of such substance. In this we have *prima facie* proof that appellant's contention was correct, and the burden was on appellee to show as a matter of fact that Wingfield sold appellant a different lot from the one described in the deed.

This he has failed to do. Wingfield, testifying in behalf of appellee Laprade, gives as one of his reasons for believing that he showed appellant lot No. 1 in section 61 of the Rogers and Fairfax Addition, that it was a larger lot than the other lots, and he was anxious to sell appellant a bargain. Upon reference to the plat in the record, which is admitted to be an exact copy of the survey made by Wingate, city engineer of Roanoke, it is seen that this lot is not only no larger than the other lots, but that it is actually smaller—in fact it is shown to be the smallest lot on the plat. This witness (Wingfield), testifying fourteen

years after the transactions had with appellant, does not speak
in positive terms, but uses such expressions as "I think so,"
"If I recollect correctly," "I am still under the impression,"
etc. That his recollection is poor and his statements unreliable
is shown from the fact that he is in error about the very things
he states most positively, and upon which he principally relies
to bear out his statement that he sold appellant lot No. 1 in
section 61 of Rogers and Fairfax's Additions. For instance,
he says Fourteenth street had been laid off and graded, and had
been scraped, and that he could not have made any such mis-
take unless doing it intentionally; whereas he is contradicted in
this by every witness who testified on the point. The uncon-
tradicted proof is that Fourteenth street was never marked off,
except by a ploughed furrow on either side, and that shortly
thereafter grass had grown up to such an extent that a casual
observer would not take any notice of these furrows. Boswell,
a witness for appellee Laprade, and a real estate agent whom
appellant had requested to sell his lot, had a survey made of
it, as described in appellant's deed, in September, 1899, and
neither he nor the city engineer who made the survey discov-
ered at that time that it was a street; and in answer to the
question, "At this time, then, no street had been run through
this lot, and, so far as you know, no street has been run through
it now; is that correct?" said "That is correct." Hawkins,
another witness for appellee Laprade, expressly says that it had
not been graded, but was merely indicated by a ploughed fur-
row. Walker, who at the time of the sale to appellant was
working for Wingfield, says: "At that time it (Fourteenth
street) was in grass, and the lots adjoining it were in grass";
and in answer to the question "Was there any street opened
across it at that time?" said, "No, sir."

We do not deem it necessary to pursue this evidence further.
In our view of it the conclusion therefrom is irresistible that
appellant believed at the time that he was purchasing the lot
which was conveyed to him by the deed of October 17, 1890,

which lot is included almost entirely within the limits of Fourteenth street, and that appellee Laprade believed at the time that he was selling to appellant an entirely different lot, which appellant had not seen and would not have bought had it been shown to him; and that the deed of October 17, 1890, by mistake, conveyed to appellant a lot which appellee Laprade had no right to convey, the greater portion thereof having been theretofore dedicated to the city of Roanoke as a street. Under these circumstances, clearly, that deed should be set aside and annulled, and appellant should recover from appellee Laprade the purchase money paid therefor.

It appears that the purchase money was paid partly in cash and partly by the assumption of certain debts secured on the lot supposed by appellee Laprade to have been conveyed, and the residue was secured by a deed of trust; and that the deferred payments thus secured, as well as the debts assumed by appellant, were thereafter paid by him, but when these payments were made does not appear from the record.

Upon the question as to the time from which appellant would be entitled to interest on the money which he should recover from appellee Laprade the authorities cited on his behalf in support of the contention that he should recover interest from the date the purchase money was paid do not apply. They are cases which hold that upon breaches of the warranty of title the vendee is entitled to the amount of the purchase money paid by him with interest from eviction and costs. The principle governing here is that where money has been paid and received under a mutual mistake of fact, and no fraud or misconduct can be imputed to the party from whom the money is sought to be recovered, interest will not be allowed except from the time when the mistake was discovered and demand made. *Craufurd* v. *Smith,* 93 Va. 623, 23 S. E. 235, 25 S. E. 657. See also 22 A. & E. Ency. L. (2d Ed.) 627, and authorities cited in note.

Among the authorities there cited is *Talbot* v. *Bank,* 129

Mass, 67, 37 Am. Rep. 302, in which the opinion says: "Interest on the amount paid by the plaintiffs is recoverable only as damages for the wrongful detention of the money by the defendant. Nothing in the facts agreed shows that the plaintiffs made any demand for the money before bringing suit. Under these circumstances interest should be computed from the date of the writ only."

In this case the bill alleges, and the allegation is not denied, that the demand was made on the —— day of ————, 1903; so that it would not be possible for this court to do more than determine that appellant is entitled to recover of the appellee, Laprade, the consideration named in the deed of October 17, 1890, namely, $700.00, and remand the cause to the Circuit Court with direction to ascertain the exact date upon which the demand was made by appellant upon appellee Laprade for the return of the said $700.00; and, upon this being ascertained, to make its decree cancelling and annulling the deed of October 17, 1890, and authorizing appellant to recover of appellee Laprade the sum of $700.00, with interest thereon from the date upon which appellant made demand upon appellee Laprade therefor.

It follows that the decree appealed from must be reversed and the cause remanded to be further proceeded with in accordance with this opinion.

*Reversed.*