Statement.

## Wytheville

### WARDELL V. BIRDSONG AND OTHERS.

#### June 12, 1913.

#### Absent, Keith, P.

1. EQUITY—*Rescission—Mutual Mistake—Sale of Land in Gross—Contracts of Hazard.*—Where the mistake in the quantity of land sold is so gross as to amount to a fraud upon the purchaser, he should not be required to abide by his contract, if executory, and, if executed, a court of equity has the power to and should relieve him of the consequences of the mistake by rescinding the contract *in toto,* provided always the parties thereto can be put in *statu quo* and the rights of innocent third persons have not intervened. It is not necessary that there should have been intentional or wilful fraud and deceit. Thus where a vendor honestly believed and represented a tract of land to contain about two hundred acres, when in fact it contained only ninety-four and one-half acres, the sale will be set aside, although the deed contains a clause that "it is understood this land is sold by the lump and not by the acre."

2. EQUITY—*Contracts of Hazard—Sale of Land in Gross—Presumption.*—Contracts of hazard as to the quantity of land in a designated boundary are not discountenanced when they are clearly established and their terms are fair and reasonable, but courts of equity do not regard them with favor. The presumption is against them, and this presumption can only be overcome, if at all, by clear and cogent proof. Where parties contract for the payment of a gross sum for a tract or parcel of land, the presumtion is that the quantity influences the price to be paid, and that the agreement is not one of hazard.

Appeal from a decree of the Circuit Court of Sussex county. Decree for the defendants. Complainant appeals.

*Reversed.*

The opinion states the case.

*Thomas H. Howerton* and *Wm. B. Cocke,* for the appellant.

. *R. H. Mann,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

M. L. Birdsong, on July 2, 1904, conveyed to B. R. Bird-
song by the general description, "a tract or parcel of land
in Sussex county containing 700 acres, more or less, and
adjoins the land of E. C. Land and R. L. Dobie and
others," which deed, though absolute on its face, was in
reality a mortgage given to secure certain indebtedness
of the said M. L. Birdsong to B. R. Birdsong, E. T. Bird-
song and F. J. Birdsong, and whereby said M. L. Bird-
song remained the owner of the property conveyed, sub-
ject to the said mortgage. A certain portion of this tract
of 700 acres of land was separated from the main body
of the tract by a county road, and this separate portion
of the land was, by all concerned, supposed to contain
about 200 acres.

On December 1, 1907, M. L. Birdsong agreed to sell and
convey unto John G. Hawley "200 acres of land, more
or less, lying, being and situate in . . . magisterial dis-
trict, Sussex county, Virginia, bounded by the lands of
Gray Lumber Company, the main run on Assamosic
swamp and the main county road leading from Waverly to
Sussex county court-house," at the purchase price of
$1,250, but with a provision for abatement if the acreage
fell below 185 acres, and providing for a subdivision and
survey, if desired, of which purchase price Hawley paid
$100, and the contract was to run for one year, with a
right to declare it forfeited after that year, which right
was not exercised.

A short while before March 11, 1909, A. J. Wardell,
who had theretofore resided in the State of Ohio, came to
the town of Waverly, Sussex county, where he met Haw-
ley, who was doing business in said town as a real estate

agent, and, with Hawley, Wardell looked at certain lands, including the tract supposed to contain 200 acres just mentioned, the boundaries of which they went partially over, with the view of a sale thereof to Wardell; and on March 11, 1909, Hawley and Wardell entered into an option contract, giving to Wardell the right to purchase, within a stated time, certain lands which Hawley had for sale, including the so-called 200 acre tract. By the terms of this option contract Wardell had the right to purchase said 200 acre tract "at $1,700.00, if taken in lump, or eleven ($11) dollars per acre, whatever the number of acres are shown to be by a careful survey thereof, the party of the second part (Wardell) to have the option of choosing whether by lump or by the acre at the time of closing the deal finally." At the time of the making of the option contract Hawley showed to Wardell his contract with the said M. L. Birdsong for the purchase of said land. Wardell returned to his home in Ohio, and, after the 20th of March, 1909, on which date his option contract expired, he came back to Waverly and indicated his intention to purchase the "200 acre tract," to which declared intention Hawley replied that the right to purchase this land had been forfeited, as the time had expired, but said that he would not be mean about it and would arrange with Mr. Birdsong for the deed, which was necessary by reason of the fact that the title to the land was still outstanding in B. R. Birdsong's heirs by virtue of the said deed intended as a mortgage, and for the further reason of the non-payment by Hawley of the balance of the purchase price for the land due to M. L. Birdsong. Hawley furnished Wardell with what purported to be an abstract of title to the 200 acres, but was, in fact, an abstract of title to the 700 acre tract, which included the 200 acre parcel, mostly in undergrowth and small trees, the lines of which were but partially pointed out to Wardell by Hawley; and in

the meantime Wardell had asked both Hawley and M. L. Birdsong, separately, about the number of acres in the tract of land that he was proposing to buy as his future home, and each of them expressed the belief that the tract contained about 200 acres. Just before and at the time the deed from the widow and heirs of B. R. Birdsong, of date April 1, 1909, conveying to Wardell and his wife the said tract of 200 acres, was being written, Hawley asked Wardell whether he would take said land by the lump or by the acre, to which Wardell replied that he would take it by the lump, as he had intended to do so from the first. This deed, when finally executed and delivered, described the land conveyed as containing 200 acres, more or less, but also stated "and it is understood this land is being sold by the lump and not by the acre." Settlement was made for the land by Wardell and wife with Hawley by paying $1,500 in cash and executing their note for the balance of the purchase money, $200, secured by trust deed on the land, the money and the note being received by M. L. Birdsong. Later, to-wit, on April 26, 1909, Wardell had the land surveyed by a competent surveyor, who reported that the tract contained but 94½ acres, and that there was a difference of a few acres in the real boundaries thereof, and the boundaries pointed out by Hawley to Wardell prior to the option contract, and upon which space between the lines, as indicated by the survey and as pointed out by Hawley to Wardell, the latter had built a modest dwelling.

Upon the fact of such difference in the boundaries being brought to the attention of Hawley, he immediately purchased sufficient land from the Gray Lumber Company, the owners of the adjoining lands, to make lines accord with the boundaries pointed out by him to Wardell, and forwarded a deed for this additional land—five and one-third acres—to Wardell on June 26, 1909, which deed was

retained by the latter, as he claims, simply as an evidence that a mistake had been made.

On the 30th day of August following, Wardell and wife filed their bill in this cause, making Hawley, M. L. Birdsong and the widow and heirs of B. R. Birdsong, deceased, parties defendant thereto, and alleging that the land in question was purchased by complainants, relying on the statements and representations of Hawley and M. L. Birdsong that it contained about 200 acres, and on the recital in the deed of conveyance of the land to complainants that the tract contained 200 acres, more or less, and that if they had not believed said statements and representations to be true, they would never have purchased the said land; that they never purchased this tract of land as a contract of hazard, but believing it contained about 200 acres; that the widow and heirs of B. R. Birdsong, deceased, made a mistake in conveying said land, intending to convey 200 acres, when, in fact, the conveyance was of only $94\frac{1}{2}$ acres, and that there was a material mistake made by the grantors in said deed and the complainants in selling and buying said tract of land. The bill then charges that the statements and representations made by Hawley and M. L. Birdsong that the tract of land contained 200 acres were false and were made to deceive and induce the complainants to purchase said tract of land for 200 acres, when they knew that the tract did not contain that number of acres, or anything like that amount of land. The prayer of the bill, in substance, is that the said option contract with Hawley and said deed from B. R. Birdsong's widow and heirs to complainants be rescinded and declared null and void; that the purchase money paid by complainants for the said land be refunded to them, with interest; that the deed of trust and note for the deferred payment be cancelled, and that damages be awarded complainants for building the house on the land of the Gray Lumber Company, etc.

The defendants demurred to and answered the said bill, taking the ground in their answer that no false statements or representations had been made inducing complainants to buy the land in question; that complainants understood that the deed for the land to them was to be a contract of hazard; that while Hawley did state to complainants that he bought the land for 200 acres conditionally, and believed it did contain 200 acres, as old surveys in the neighborhood generally overran, and did furnish Wardell an abstract of the 700 acres of land, which purported to be an abstract of 200 acres, and did make a mistake in representing its boundary lines, he, Hawley, never stated that the tract contained 200 acres as a matter of fact, and no mistake had been made in conveying land as 200 acres to complainants, as it was intended that the conveyance should be for the land irrespective of the number of acres it contained. While M. L. Birdsong denies that he falsely represented the number of acres in the tract or attempted to mislead the complainants, he admits that, upon being asked by Wardell as to the number of acres, he "told him that he thought or reckoned it contained 200 acres."

Upon the hearing of the cause on the pleadings and depositions of witnesses taken and filed by the respective parties, the court overruled the demurrer to the bill and the motion to strike out certain portions of the deposition of said A. J. Wardell, but was of opinion that the complainants had purchased the land in question under a contract of hazard and were, therefore, not entitled to the relief prayed for in their bill, and accordingly dismissed the bill, with costs, to the defendants; and from the decree of the court so ruling the complainant, A. J. Wardell, survivor of himself and his wife, obtained this appeal.

The material facts in the case are practically undisputed, and, when analyzed, they very clearly show that the appellant, who was a stranger in Sussex county when, in

search of a tract of land in Virginia for his future home, he met appellees, Hawley and M. L. Birdsong, who had for sale the tract of land in question, and that they informed him what the tract contained, and that it always had been understood as containing 200 acres; that Hawley, when told by appellant that he was in search of a small farm, said: "I have a nice little 200 acre farm that is my own property, which I have purchased to make myself a home, and if it were not that I have to raise a little money, you or no other man could purchase it"; that M. L. Birdsong, in selling the land to Hawley, believed, as did Hawley, that it contained 200 acres, "with slight variations in surveyors' instruments, to cover which a clause was found in all deeds"; that appellant relied on the statements of Hawley and M. L. Birdsong that the land contained 200 acres and agreed to purchase it, believing that the tract contained 200 acres, except to the extent that the number of acres might vary because of "any slight variations in surveyors' instruments"; and that the land intended to be sold, and which was conveyed to appellant, instead of containing 200 acres, or approximately that number of acres, contained but 94½ acres.

It further appears, as is conceded in the argument, that Hawley and M. L. Birdsong not only believed the property in question contained 200 acres, more or less, but that M. L. Birdsong had derived the property from his father, who always thought there were 200 acres in the tract, and on one occasion sold it for 200 acres; and that "the entire Birdsong family always thought that the field contained two hundred acres, and referred to it as the two hundred acre field."

The sole question, therefore, presented on this appeal is whether or not a court of equity, under the circumstances narrated, has the power and ought to decree the relief prayed in the bill of complaint.

It would seem to us shocking to the conscience of a court of equity to hold that a purchaser of a parcel of land sold and conveyed to him as 200 acres, more or less, when in fact the acreage is but 94½, should be required to keep and pay the purchase money for the land, although the sellers of the land, as well as the buyer, believed there were in the tract conveyed about 200 acres, and although the conveyance also contains the clause "and it is understood this land is sold by the lump and not by the acre." There is no pretense made in the case that appellees have been prejudiced or even inconvenienced by delay on the part of appellant in the institution of this suit to have the transaction cancelled and annulled and the purchase money paid by him refunded by appellees.

The authorities are not to the effect that the mistake in such a case shall be the result of intentional or wilful fraud and deceit in order that the party wronged or injured by the mistake may be relieved from the strict terms of his otherwise binding contract, but that where the mistake complained of is so gross as to amount to a fraud upon the injured party's rights, he should not be required to abide by his contract, if executory, and, if executed, a court of equity has the power to and should relieve him of the consequences of the wrong-doing or mistake by rescinding the contract *in toto,* provided, always, that the parties thereto may be put in *statu quo,* and the rights of innocent third parties have not intervened.

In *Lee* v. *Laprade,* 106 Va. 594, 56 S. E. 719, 117 Am. St. Rep. 1021, 10 Ann. Cas. 303, the opinion of this court, quoting from 4 Min. Inst. 697, says: "In cases of plain mistake or misapprehension, though not the effect of fraud or contrivance, equity will rescind the conveyance, if the error goes essentially to the substance of the contract, so that the purchaser does not get what he bargained for, or the vendor sells that which he did not design to sell."

"Thus, if A buys land of B, to which B is supposed to have a good title, and it turns out, in consequence of facts unknown alike to both parties, he has no title at all, equity will cancel the transaction and cause the purchase money to be restored to A, putting both parties in *statu quo.*" 4 Min. Inst., *supra,* at p. 700.

Contracts of hazard, such as we are here considering, have not been discountenanced by the courts when they have been clearly established and are fair and reasonable, but courts of equity do not regard them with favor, the presumption being against them, which presumption is to be overcome, if at all and effectually, by clear and cogent proof; and where the parties contract for the payment of a gross sum for a tract or parcel of land, upon an estimate of a given quantity, the presumption is that the quantity influences the price to be paid and that the agreement is not one of hazard. *Blessing's Admr.* v. *Beaty,* 1 Rob. (40 Va.) 304, in which case the court held that the appellant was entitled to compensation for the deficiency of $34\frac{1}{2}$ acres in a tract of 503 acres, on the ground of mutual mistake.

The case just cited and other cases are referred to in *Boschen* v. *Jurgens,* 92 Va. 756, 24 S. E. 390, as affirming the rule of law stated above, and in the opinion by Keith, P., in speaking of the discrepancy in the depth of a town lot contracted for as being 138 feet, when, in fact, it was only 129 feet deep, says: "It seems to us that the appellant is in this dilemma: either her testator made the representation as to the quantity in the honest belief of the truth of what he said, in which case the court should grant the relief prayed for on the ground of mutual mistake of the parties as to the material term in their contract, or that he made the representation as to quantity, knowing or having reason to know that it was untrue, in which case appellee's claim for relief would rest upon even stronger

grounds. In justice, however, to the vendor, Mr. Boschen, it must be said that there is nothing in this record to support the suspicion that he contemplated or perpetrated fraud," and the relief prayed was decreed.

In *Belknap* v. *Sealey,* 14 N. Y. 143, 67 Am. Dec. 120, involving a contract for the sale of a tract of land in gross, by reference as to quantity to a deed describing the land as containing "about nine acres, be the same, more or less," from which one acre and six perches had been sold, but which proved to contain only about half as much as represented, and which was mainly valuable for division and sale as city lots, and its value, therefore, being precisely in proportion to quantity, the court said in its opinion: "A deed which describes the land and states the number of acres, although with the words 'more or less,' clearly imports that there is not a great deficiency or excess. If the deficiency is one-half, the instrument carries on its face a gross misrepresentation. And it is quite material to observe that such words do not import a special engagement that the purchaser takes the risk of the quantity. Their presence in the contract or deed may render it more difficult to prove such a mistake as will justify the interference of equity, but they are not equivalent to a stipulation that the mistake, when ascertained, shall not be ground of relief."

As held in the opinion of this court in *Boschen* v. *Jurgens, supra,* though the seller of land made a false representation as to quantity in the honest belief of the truth of what he said, yet a court of equity should grant the relief prayed on the ground of mutual mistake as to the material terms of the contract between the parties. See also *Estes* v. *Odone,* 91 Ga. 600, 18 S. E. 355.

In the case at bar the mistake of the parties selling the land as to the number of acres it contained was so gross as to amount to, and in all respects to be the equivalent

of, a fraud upon the rights of appellant; and this appears from the undisputed facts in the case as well as from the preponderance of the evidence; and, therefore, the mutual mistake charged has been established, and it is to be presumed that quantity influenced the price paid for the land, which presumption has not been overcome by any fact or facts proved; and the very brief delay in ascertaining the deficiency in the land being satisfactorily accounted for, we are of opinion that the circuit court erred in denying the relief prayed in appellant's bill.

The decree appealed from is reversed, and the cause remanded for further proceedings therein not in conflict with the views expressed in this opinion.

*Reversed.*