## Staunton.

## INTERSTATE COAL COMPANY, INC., V. EATON, RHODES & CO.

### September 22, 1921.

1. JUDICIAL SALES—*Rights and Obligations of Purchasers—Omisssion of Obligation from Decree.*—While it is true that a purchaser at a judicial sale cannot take advantage of a mere mistake or inadvertence whereby some obligation of which he had notice or was fairly charged with notice has been omitted from the decree of sale, and that the court in such case applying equitable doctrines will correct such inadvertencies and inaccuracies, so as to require him to perform a contract of which he had notice and which in equity and good conscience he ought to perform, the court has no authority to impose additional obligations in connection therewith which have never. been assumed by the purchaser either in express terms or by necessary implication.

2. PURCHASERS—*Rights of Purchasers—Confirmation.*—Purchasers at judicial sales are not more helpless than others with respect to their contracts. Before confirmation the proceeding is *in fieri*, and the bidder is not considered as a purchaser. But after confirmation, the purchaser at a judicial sale is as much entitled to the benefit of his purchase as a purchaser *in pais.*

3. JUDICIAL SALES—*Rights and Obligations of Purchasers—Omission of Obligation—Case at Bar.*—In the instant case appellant offered to purchase the property of a coal corporation which was in the hands of a receiver. Its offer was accepted. The decree of sale expressly provided that the sale was made subject to certain contracts made by the receiver, but made no reference to other contracts, the liability of the purchaser to perform which was in issue in the instant case, nor were the latter contracts referred to in the offer of sale made by the purchaser.

   *Held:* That the complete contract of the sale was contained in the written offer of the purchaser and the acceptance in the decree of sale, and that the lower court exceeded its power when it undertook to impose additional burdens upon the purchaser which were not imposed by the contract itself, viz., the performance by the purchaser of the contracts not referred to in the offer or the decree.

Appeal from a decree of the Circuit Court of Wise county. Decree for complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*Morison, Morison & Robertson,* for the appellant.

*Morton & Parker* and *Moulinier, Bettman & Hunt,* for the appellee.

PRENTIS, J., delivered the opinion of the court.

The properties of the Empire Coal Land Corporation were·sold to the Interstate Coal Company, Inc., the appellant, in a suit for the foreclosure of a mortgage, by decree of September 9, 1916. At the time of this sale and for some time theretofore, the properties had been operated by a receiver appointed in that suit, who had entered into a contract spoken of as contract 807-A, which provided for the sale and shipment of the entire production of coke by the receiver for the residue of the year 1915, with a minimum of 4,000 tons; for 3,000 tons per month for the first six months of 1916, subject to certain terms and conditions governing the shipments, and also gave to the party not in default the privilege of cancellation of the unshipped portion of any month's quota, the price being $2.25 per ton of 2,000 pounds. George L. Carter, who was the owner of a large number of bonds of the Empire Coal Land Corporation, objected to this contract, and made a motion to set aside the order approving it. On January 11, 1916, the court overruled this motion of Carter, again ratified that contract, and in addition thereto approved another contract between the receiver and the appellees, dated December 31, 1915, designated as contract 843-A. This contract

provided for the delivery by the receiver of 6,000 tons, at $2.60 per ton of 2,000 pounds, shipments to be 1,000 tons per month over the first half of the year 1916, subject to certain terms and conditions, among which was a provision that the party not in default had the option of canceling any unshipped portion of a month's quota by giving notice in writing to the party in default on or before the 10th of the following month, and that in the absence of such notice the unshipped portion of any month's quota was to be shipped immediately after the date fixed for expiration of the contract, unless some other date should be agreed upon.

The parties proceeded under these contracts, and neither appears to have demanded strict performance thereof, so that while for one month there was a small overshipment, for most of the time the minimum quantities required by these contracts were not shipped. It is observed that under both contracts, by their terms, the shipments were to be during the first half of 1916. Thereafter, in July, August and September, 1916, small quantities of coke were shipped, apparently under the contracts, but much less than the minimum monthly quantities thereby required. There was an interview between the receiver and the representative of the appellee, after July 1, 1916, from which it may be concluded that the receiver agreed to continue to sell and ship under those contracts. Whether this created a new contract or not is one of the questions raised. If it was a new contract, it was made by the receiver without authority, for it was apparently never reported to the court or approved. In our view of the case, it is unnecessary to determine this question. The receiver had also made contracts with Rogers, Brown & Co. and American Locomotive Company for the sale and shipment of 3,000 tons of coke per month, covering the last half of 1916.

This being the general situation, on the 28th day of July, 1916, the special commissioners advised the court that they

were in a position to effect a private sale of all of the property of every class and kind belonging to the Empire Coal Land Corporation, or to the receivers, or receiver, in the cause, at the price of $425,000, to the Interstate Coal Company, Inc., upon terms and conditions which were fully set forth in the offer filed with their report. That offer in writing was clear and definite, provided for cash, or its equivalent, for the payment of taxes, costs, etc., to be ascertained as of September 1, 1916, for the assumption of a certain vendor's lien, to be deducted from the specified purchase price, and covered other details, the recital of which is unnecessary.

The seventh clause of this proposition contains a provision to this effect: That if this offer is accepted, the Interstate Coal Company, Inc., shall, after delivery of possession of the property to it, have the right to mine and ship coal and to manufacture and ship coke from the said premises, to use the timber therefrom in the construction of houses and for any other purposes upon said premises, to use the said premises, operate the mines now opened thereon and to open and operate new mines, or lease the same or any part thereof for mining purposes, and to dispose of any machinery and equipment until default be made in the payment of the purchase money notes, or any part thereof.

It was thereupon decreed that action upon this report and proposed sale be suspended and held in abeyance until September 1, 1916, for such action thereon at that time as might to the court appear proper; and the cause was referred to a special commissioner to make report in vacation of the liens, debts and other equities of said Empire Coal Land Corporation, or the receiver in this cause, M. Zeigler, as well as his predecessors, H. Hardaway and A. K. Morison, receivers, and also of the taxes and indebtedness both of the company and the receivers. Thereafter, on September 9, 1916, by decree drawn with great care and cover-

ing fifteen printed pages of the record, in which the court apparently undertook to determine every question in the case ready for decision, the bid of appellees was accepted, using this language: "Upon due consideration, the court is of opinion and finds from the proceedings had in this cause for the sale of the properties herein involved that not more than the sum of $425,000 can be realized from a sale of the same; that it is to the best interest of all the parties concerned that this court decree a sale of the said properties for the sum of $425,000 upon the terms offered by the Interstate Coal Company, and that the said offer of the said Interstate Coal Company be accepted instead of selling the property at public auction.

"Upon due consideration, it is adjudged, ordered, and decreed that the offer of the said Interstate Coal Company for the purchase of the said properties, be and the same is hereby accepted, ratified and confirmed, and the said Interstate Coal Company is hereby declared to be the purchaser of all the properties of the aforesaid Empire Coal Land Corporation, including the properties owned or acquired by the receivers of this court in this cause, to-wit: A. K. Morison and H. Hardaway, or their successor, M. Zeigler, of every class and kind, excepting only moneys, bills and accounts receivable, due to the said Empire Coal Land Corporation or to any receivers or receiver in this cause."

Thereupon follows a general enumeration of the property of every class, kind and description, concluding with clause (d), using this comprehensive and interpretive language: "Any and all other properties of every class and kind belonging to the said Empire Coal Land Corporation or the receivers in this cause of any character whatsoever not hereinbefore specifically enumerated or referred to, it being the intention of this decree to sell, transfer, assign and deliver to the said Interstate Coal Company every class

and kind of property, rights, easement or privilege, and all equities of every class and kind owned by the said Empire Coal Land Corporation or by the receivers in this cause except such properties, real, personal or mixed, as may be in the hands of R. S. Graham, the trustee in bankruptcy, and except moneys, bills, and accounts receivable in the hands of R. T. Irvine and D. D. Hull, Jr., special commissioners in this cause." And these provisions are followed by this language: "This sale is made subject to the contracts made by Zeigler, receiver, for the sale to Rogers, Brown & Co. of two thousand tons per month of standard forty-eight-hour furnace coke for the last half of 1916, at the price of $2.50 per ton net f. o. b. ovens, to be shipped to Hanging Rock Iron Company, Hanging Rock, Ohio, and for the sale of the requirements of American Locomotive Company during last half of 1916, not to exceed a maximum of one thousand tons of seventy-two-hour foundry coke at the price of $5.25 per ton f. o. b. Richmond, Va. For all shipments made upon said contract after September 2, 1916, payment thereafter shall be made to Interstate Coal Company."

Thereafter, on January 19, 1917, the appellees filed their petition, asking for a correction of the decree of sale to which petition the appellant objected, and the court entered a decree thereon in which this language is used: "* * * it appearing from the argument of counsel that the said petitioners are apprehensive that said decree of sale, by reason of express mention of the contracts with the Rogers Brown & Co. and the American Locomotive Company intended to and did exclude the contracts made by the receiver with said petitioners, the court hereby declares that no such exclusion was intended in said decree, and that the intention of said decree was that the Interstate Coal Company took the properties sold by the commissioners subject to all valid contracts entered into by the receiver and subsisting and enforceable at the time of said decree; that

nothing contained in said decree nor in this order shall be construed as a finding or determination as to whether or not said contracts with the said petitioners were subsisting and enforceable contracts at the date of said decree; that the court having construed said decree of sale, entered on September 9, 1916, so as to remove said apprehension of the petitioners, no further ruling upon said petition is necessary, and it is, therefore, dismissed."

In the meantime, before this decree was entered, the purchaser had repudiated the two contracts for the shipment of coke to the appellees, designated as 807-A and 843-A, hereinbefore referred to.

Nothing further appears in the record before us until May, 1918, when the appellees filed their petition upon which the decree appealed from is based. The substance of that petition is the allegation that the appellant company purchased and holds the property of the Empire Coal Land Corporation, subject to the condition that it fulfill and completely perform said contracts by shipping the remaining undelivered tonnage of coke at the prices fixed therein, and that it has failed and refused to fulfill and perform said contracts; that, notwithstanding such failure and refusal, it continues to hold, operate and take the benefits of the said properties purchased by it under the decree of September 9, 1916; and they pray that a decree of specific performance be entered against the appellant, requiring it to perform specifically said contracts by shipping at once, in accordance with shipping orders of appellees, the remaining undelivered tonnage of coke, as aforesaid, or that, by reason of the breach of said condition of purchase, the sale of said Empire Coal Land Corporation properties be set aside, canceled and annulled, and that the appellant be required to restore the said properties to the receiver, and that the receiver be required to deliver, in accordance with said shipping orders the said unshipped portions of the contracts, etc.

Appellant demurred to the petition, and answered, denying its substantial allegations.

After the taking of testimony, the court, on February 15, 1920, entered the decree from which this appeal is taken. This decree grants one of the prayers of the petition, and holds that the Interstate Coal Company purchased the property of the Empire Coal Land Corporation, subject to the performance of all valid contracts theretofore entered into by the receiver, and subsisting and enforceable at the time of the sale, and especially that the two contracts with the appellees were valid and subsisting at the time of the sale, and were enforceable to the extent of the unfulfilled portions thereof, to-wit: 2,474.30 tons of coke to be shipped under contract 807-A, and 1,688.10 tons to be shipped under contract 843-A; and, inasmuch as it appeared that the purchaser of the properties had not complied with the terms of the sale, in that it had not shipped the coke found to be due under these contracts, it thereupon adjudged "that unless the said Interstate Coal Company, within ninety days from the entry of this decree, fully comply with the terms of said sale and the decree of this court, heretofore entered, authorizing and confirming the same, by shipping or causing to be shipped, subject to the order of the said petitioners, as provided by and in said contracts, the amount of coke above set forth" (specifying it) "upon the terms and at the prices respectively provided in said contract," that the property should be sold by special commissioners named in the decree at the cost of the Interstate Coal Company.

The case then involves the rights and obligations of the appellant, the purchaser under the decree of sale of September 9, 1916, which must be determined from a consideration of the facts recited. It is customary in such decrees for the court fully to protect all of the rights and equities of those who have dealt with the receiver. This

is done sometimes by specifically requiring that the purchaser shall assume the obligations of all outstanding contracts with the receiver, and sometimes by providing for the filing of all claims arising thereunder with the court for satisfaction out of the proceeds of the sale thereby brought under the control of the court for distribution. This seems to have been fully realized by those who drew the decree of sale in this case, for it expressly provides that the sale is made subject to the contracts made by the receiver for the sale of coke to Rogers, Brown & Co. and to the American Locomotive Company, such contracts covering the last half of 1916. They were, therefore, current, unperformed contracts at the time of the sale. It is noted that the contracts with Eaton, Rhodes & Co., here involved, by their express provisions, covered the first half of 1916, and, therefore, according to the record, had expired. This probably explains why they were overlooked, if in fact they were overlooked at that time.

The appellees rely upon the established rule that purchasers at a judicial sale may by summary process be required to perform the contract of sale, and cite many authorities for that proposition. The trial court evidently based its decree upon that undoubted proposition of law, and held that because of its unquestioned power to require the purchaser to perform the contract of sale, it had authority to enter the decree appealed from. It, therefore, adjudged that, notwithstanding the fact that the period named for the performance of the contracts here involved had then expired, that the purchaser made no reference to them in its offer to buy, and that the decree which accepted his unqualified offer also failed to refer to them, nevertheless they were subsisting contracts which the purchaser assumed, and hence was bound to perform, and that in case of his refusal the entire property should be resold.

[1, 2] We are unable to find anything in the record which

justifies this finding of fact. The complete contract for the sale is contained in the written offer of the purchaser and its acceptance in the decree of September 9, 1916. The irresistible conclusion from a consideration of the plain terms of the bid of the purchaser and the decree accepting it is that these contracts of Eaton, Rhoads & Co. were not referred to in the contract of sale, and that the purchaser assumed no obligation whatever with reference thereto. While it is true that a purchaser at a judicial sale cannot take advantage of a mere mistake or inadvertence whereby some obligation of which he had notice, or is fairly charged with notice, has been omitted from the decree of sale, and in such case the court applying equitable doctrines will correct such inadvertencies and inaccuracies, not, however, to do an injustice to the purchaser, nor to require him to perform a contract which he has not engaged to perform, but only for the purpose of requiring him to perform a contract of which he has notice and which in equity and good conscience he ought to perform so as to prevent him from taking an unfair advantage of a mistake to evade the obligation of his contract. Purchasers at judicial sales are not, however, more helpless than others with respect to their contracts, and courts have no authority to impose additional obligations in connection therewith which they have never assumed either in express terms or by necessary implication.

The doctrine governing judicial sales is thus stated in *Virginia Fire & Marine Ins. Co.* v. *Cottrell,* 85 Va. 857, 861, 9 S. E. 133, 17 Am. St. Rep. 110: "Until the sale has been confirmed the proceeding is *in fieri;* the bidder is not considered as a purchaser, and he is therefore not liable for loss to the property, by fire or otherwise, in the *interim,* nor is he compellable before confirmation to complete his purchase. But as soon as the sale is absolutely confirmed, then the contract becomes complete; the bidder, by the ac-

ceptance of his bid, becomes a purchaser—that is to say, the owner of the equitable title subject to a lien on the property for the unpaid purchase money—and he may be compelled by the process of the court to comply with his contract. 2 Daniell's Chancery Practice, 5th ed. 1275; *Hurt v. Jones*, 75 Va. 341; *Blossom v. Milwaukee, etc., R. R. Co.*, 3 Wall. 196.

"It is by no means, therefore, a matter of discretion with the court to rescind a sale which it has once confirmed, nor is the sale to be rescinded for mere inadequacy of price, or for an increase of price alone; but some special ground must be laid, such as fraud, accident, mistake, or misconduct on the part of the purchaser, or other person connected with the sale, which has worked injustice to the party complaining. After confirmation, the purchaser at a judicial sale is as much entitled to the benefit of his purchase as a purchaser *in pais*, and the sale in the one case can be set aside only on such grounds as would be sufficient in the other. There is no principle upon which any distinction between the two classes of cases can be drawn * * *."

In *Sloss Iron, etc., Co. v. South Carolina, etc., R. Co.*, 85 Fed. 133, 29 C. C. A. 50, 42 U. S. App. 748, it appeared that the receivers of a railroad had made a contract with a coal company for a year's supply of coal with the option on the part of the coal company of renewing the contract. The foreclosure purchasers, who had knowledge of the contract and of the date of its termination, but not of the option clause, received coal under the contract until notified by the coal company of its intention to renew it at the expiration of the year. It was held that the purchasing company was not bound by the option clause of the contract.

In *Kansas City Southern R. Co. v. King*, 74 Ark. 366, 85 S. W. 1131, it was held that a statute providing that whenever any railroad company, corporation, individual, or individuals shall purchase any railroad from any other rail-

road company, corporation, individual or individuals, the purchaser shall take and hold the same subject to all debts, liabilities and obligations of the company from which said road was purchased, etc., does not apply to the sale of railroad properties by foreclosure, and that the purchaser at such sale takes the property freed from the debts, liabilities, and contracts of the mortgagor, except such as were prior liens, and such as the court may have provided for in its decree of foreclosure. 6 Ann. Cas. 86.

There are many cases in which the power, right and duty of chancery courts to supervise sales ordered by their decrees and to protect the parties from all fraud, mistake, unfairness and imposition by setting aside such sales, is recognized. Indeed, it may be said that for the prevention of fraud and imposition, the rule is universally recognized as applicable to such sales. Those cases, however, have no relation to a case like this where there is an absence of any fraud, collusion, misrepresentation or inadequacy of price. *In re First Trust & Savings Bank of Billings,* 45 Mont. 89, 122 Pac. 561, Ann. Cas. 1913-C, p. 1334.

In *Houston & Texas Cent. R. Co.* v. *Crawford,* 88 Tex. 277, 31 S. W. 176, 28 L. R. A. 761, 53 Am. St. Rep. 752, it appeared that the railroad property there sold was delivered by a receiver to a purchaser subject to the payment of some claims against the receiver, which might be established before the court which appointed him within a reasonable time, and it was held that an action against the receiver brought in another court for personal injuries within the limited time, was not binding upon the purchaser because it was not presented, as required by the decree, to the court entering the decree and having control of the assets arising from the sale of the property; and this is there said: "As a general rule, the purchaser of a railroad at a sale made under an order of the court holding the custody of the property by a receiver, takes the property free from

the claims against the receiver arising out of the operation of the road; but the court ordering the sale may impose upon the purchaser liability for such debts, as a part of the consideration of his purchase. *Hicks* v. *International & G. N. R. Co.*, 62 Tex. 41; Beach, Receivers, sec. 735. A purchaser under such order can only be held liable according to its terms. In this case the order directing that possession be delivered to the purchaser prescribed that he should take the property subject to the payment of such claims against the receiver as might be established before that court within a given time. This was a condition of liability, and the purchaser cannot be held by virtue of the order alone, except for the claims so ascertained and allowed. * * * It follows that the purchaser cannot be held in this case under the orders of the court, the plaintiff not having presented his claim in accordance with the orders imposing the liability."

That this is the general rule is assumed in *Olcott* v. *Headrick*, 141 U. S. 543, 12 Sup. Ct. 81, 35 L. Ed. 851. There, while the decree of sale provided that the purchaser should pay demands which were presented within six months and that demands which were not presented within six months after confirmation of the sale should be barred, when the court came to confirm the sale the decree of confirmation contained no such limitation as to time, and it was held that inasmuch as the decree of confirmation which the purchaser accepted did not create that limitation, it did not exist, and he was held liable for a claim which was presented about eight months thereafter. In that connection it was said: "If the purchasers had objected to the decree of confirmation because it destroyed the six months' limitation, they could either have asked the court not to insert such a provision, and, on its refusal, have appealed to this court, or have declined to be bound by the sale, on the ground that the new terms varied from those contained in the decree of sale."

The purchaser was held liable only because of the terms of the decree of confirmation.

[3] So that, as we view this case, it is clear that whatever equities there may be in favor of appellees, there is no ground either upon reason or authority for imposing the burden thereof upon the purchaser of the properties of the Empire Coal Land Corporation. It is entitled to the benefit of the contract of sale and to hold the property in accordance with its terms. Under the circumstances of this case the court exceeded its power when it undertook to impose additional burdens which were not imposed by the contract itself, and which, by fair construction of its language, were excluded therefrom. It may be that if the purchaser had been notified that the assumption of these contracts was required, it would have modified its bid for the property so as to provide therefor; and it is noted in this connection that the decree which accepted the bid adjudged it to be in every respect sufficient.

Our conclusion, therefore, is that the purchaser has not failed in any respect to comply with all of the terms of its contract of purchase, so far as this record discloses, and therefore that the decree which adjudged otherwise is erroneous.

This conclusion makes it unnecessary in this case to consider the other questions which the record presents—such, for instance, as the suggestion that for breach of a contract for the delivery of personal property which is a common article of merchandise, such as coke is, the remedy is the recovery of the pecuniary damage sustained, and never specific performance; and further, that the petition which asks for specific performance of these contracts was not filed for more than a year after their alleged breach, and it appears that in the interval the price of coke had risen from $2.60 a ton to $7.00 a ton.

For the reasons indicated, the decree complained of will be reversed, and the petition on which it is based will be dismissed.

*Reversed.*