## Richmond.

82  526
89  933
82  526
104  461

### CUNNINGHAM V. MILLNER.

#### NOVEMBER 11th, 1886.

1. LAND—*Hazard sales—Relief.*—Where land is sold by contract of hazard, each party takes upon himself the risk of excess or deficiency, and in such cases no relief can be afforded either. *Norfolk Trust Co.* v. *Foster*, 78 Va. 413.
2. *Idem—Case at bar.*—A case of hazard contract, which, while not favored, yet is not discountenanced by the law, and will be enforced when reasonable, and clearly established.

Appeal from decree of circuit court of Amherst county, rendered 18th October, 1884, in the suit of John R. Cunningham, plaintiff, against James M. Millner, James M. Richeson, and Charles R. Rucker, trustees, and Samuel Richeson and James M. Dillard, defendants. The object of the suit was to enjoin sale of land under trust deed, and to get compensation for the deficiency. At the hearing the injunction was dissolved, and the bill dismissed. The plaintiff appealed. Opinion states the case.

*J. T. Brown* and *R. M. Taliaferro*, for the appellant.

*Cogbill & Berry*, and *R. Whitehead*, for the appellees.

LEWIS, P., delivered the opinion of the court.

The bill was filed to obtain an injunction to prevent the sale of a certain tract of land to enforce a deed of trust thereon. The land was purchased in May, 1869, of the appellee, Rich-

eson, by one James M. Dillard. The deed from Richeson to Dillard bears date November 20, 1869. It conveys "a certain tract of land in Amherst county, supposed to contain six hundred and fifty acres, more or less (the said tract of land being sold in gross and not by the acre), excepting one acre, containing the family burying-ground," etc.

On the same day, Dillard and wife executed a deed of trust on the land to secure the payment of the purchase money. And default having been made, the land was advertised for sale by the trustees named in the deed. Thereupon, the appellant, who was the plaintiff in the court below, by consent of all parties in interest, agreed to take the land, and to stand in Dillard's shoes, assuming all his liabilities on account thereof. He afterwards made several payments on the land, and in fact paid all the purchase money except a balance of about $975. To enforce the payment of this balance, the land was again advertised for sale by the trustees; whereupon the bill was filed, and an injunction awarded.

The case, as made by the bill, so far as it is necessary to be considered, is, that the land when sold to Dillard, was represented by Richeson, the vendor, to contain six hundred and fifty acres, and *to be comprehended within certain designated boundaries;* that in point of fact the tract contained less than the quantity represented, and that to fifty-seven acres thereof the vendor had no title, and that these fifty-seven acres have never come into the possession of the plaintiff. It is also alleged that of this deficiency, fifty acres were embraced in a certain patent issued to one Jesse Richeson, the father of the vendor, from whose estate the latter acquired it, and that the same, it has been discovered since the purchase of the land in 1869, were covered by prior valid conveyances under a survey known as "The Cabell Survey," which was made in 1796, the Richeson survey having been made in 1813. It is also alleged that the

residue of the deficiency—that is, seven acres, or four acres as the appellant now claims, has, by a recent survey, been ascertained to belong to one Thomas N. Watts. And the prayer of the bill is, that the proposed sale be enjoined, and that the plaintiff be allowed compensation or credit for the loss arising from this deficiency.

Richeson, the vendor, answered the bill, denying that he undertook to sell the fifty acres of land for which his father, in his lifetime, had obtained a patent, and averring that "he knows nothing of any four acres alleged to have been taken by Thomas N. Watts," and calling for strict proof of the allegation of the bill in that behalf. He also averred that Dillard, the purchaser, "was as familiar with the land as the respondent himself was," and that the sale, as the deed shows, was in gross for the sum of $7,500. He denied the allegations of fraud, and detailed the circumstances attending the transactions between the parties.

At the hearing the bill was dismissed, and upon the evidence adduced, we are of opinion that the decree is right.

The appellant stands in precisely the same situation in respect to the purchase of the land as Dillard occupied when by consent of parties the former acquired the rights and assumed the liabilities of the latter. This he concedes; and the question, therefore, is whether Dillard was entitled to a deduction from the purchase money he contracted to pay by reason of the alleged deficiency in the quantity of land for which the parties contracted.

The allegation of the bill as to the four acres "taken by Watts under a recent survey," is altogether unsupported by proof; and the real controversy is, therefore, as to the fifty acres of patented land.

The bill alleges that this land was intended to be embraced in Dillard's purchase; but the answer, which is responsive to

the bill, denies that such was the fact.   And the denial of the answer is not overcome by the proofs in the record.

The evidence shows that for a number of years prior to his purchase, Dillard was familiar with the land, having frequently been upon it.   It was he who first proposed to buy the land, and he readily consented to give the price for which, in reply to his inquiry, the vendor expressed a willingness to sell it.   It also shows that the parties supposed the tract to contain about 650 acres, but the boundaries were not designated, and the deed which Dillard accepted expressly recites that the sale was in gross, and not by the acre.   And Dillard himself, who was examined as a witness, testifies that he was to give $7,500 for the land as he knew it.

There is no proof of fraud, misrepresentation, or concealment, and the main ground upon which the plaintiff rests his case is, that when the deed was made and delivered to the purchaser, the patent for the fifty acres and other papers connected with the title to the land were turned over to him by the vendor.   And from this he argues that the boundaries set forth in the papers thus turned over must be looked to, in order to ascertain the intention of the parties, and the scope of the contract into which they entered; and that the land embraced in the patent not being the property of the vendor, the plaintiff is entitled to compensation to the extent of the loss he has thus sustained.

Stated abstractly his position is this: If A. sell to B. a tract of land by *designated boundary lines*, and make him a deed with general warranty, and before the whole of the purchase money is paid, it be ascertained that a part of the land was not at the time the property of A., and therefore did not pass by his conveyance, a court of equity will grant relief to B., the measure whereof will be the actual value of the land which was thus unsuccessfully attempted to be conveyed.

VOL. LXXXII—67

The proofs, however, do not support this position in the present case. When the patent and other papers were turned over to the purchaser, the contract between the parties had been closed, and the evidence does not show that they formed any part of the contract, or were intended in any way to affect it. The vendor in his deposition says that the purchaser did not demand a survey of the land, nor ask for plats, deeds, or other evidences of title. And when asked to state the circumstances under which he turned over the patent, he replied: "The day I made the deed, I handed to Dillard all the papers bearing upon the title to the place, including a patent or warrant to 50 acres of land which my father, Jesse Richeson, had, and stated to him at the same time that the legatees had given me the right and title they had in it, and I would make him a present of it." Dillard, it is true, says in his deposition he does not remember that this conversation occurred, but he does not deny that it did. The vendor also testifies that Dillard never saw or asked for the papers before they were turned over to him, which was after his deed to Dillard and Dillard's deed of trust had been executed and delivered.

There are no boundaries set forth in the deed, and this circumstance, taken in connection with the recital in the deed that the sale was in gross, and all the attending circumstances, shows that the sale was not made with reference to the boundaries specified in the patent or other papers. The case is therefore unlike the case of *Yost* v. *Mallicote*, 77 Va. 610, and cases of that class, in which there is a deficiency in quantity within certain stipulated boundaries. Here, the contract was one of hazard, in which each party took upon himself the risk of excess or deficiency—a contract, which while not favored, yet is not discountenanced by the law, and will be enforced when reasonable and clearly established. And in such cases it is well settled by the repeated decisions of this court that no

relief can be afforded to either party. *Jolliffe* v. *Hite*, 1 Call, 301; *Hull* v. *Cunningham*, 1 Munf. 330; *Keyton* v. *Brawford*, 5 Leigh 39; *Russell* v. *Keeran*, 8 Id. 9; *Watson* v. *Hoy*, 28 Gratt. 698; *Benson* v. *Humphreys*, 75 Va. 196; *Norfolk Trust Co.* v. *Foster*, 78 Id. 413. The decree is affirmed.

DECREE AFFIRMED.