𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

PECHIN, ET AL. V. PORTERFIELD, ET AL.

September 16, 1920.

1. JUDICIAL SALES—*Abatement of Purchase Price—Deficiency in Amount of Land Sold.—Confirmation of Sale.*—An increase or an abatement of the purchase price of land sold at a judicial sale will not be permitted for excess or deficiency in quantity after a confirmation of such sale, whether the deficiency results from a defect in title or a shortage in acreage, unless there be after-discovered fraud, misrepresentation, or mutual mistake.

2. JUDICIAL SALES—*Abatement of Purchase Price—Confirmation of Sale—Sale of "At Least" 300 Acres—Case at Bar.*—A grantor of land brought a general creditors' suit against the executor of the grantee and his wife and child, devisees of the grantee, to settle the estate of the decedent and to subject the land granted to the satisfaction of the unpaid purchase money. The land was ordered sold to satisfy the grantor's claim for purchase money. At the sale the commissioners announced that the land was sold as containing "at least 300 acres." In their report the commissioners stated that this announcement was made at the direction of grantee's widow and devisee. The widow denied this, but admitted that she told the commissioners that she supposed the tract contained 300 acres. In fact the tract contained only 213 acres.

*Held:* That as it appeared that all parties, including the court, had proceeded upon an erroneous assumption as to the actual acreage, there was the equivalent of a mutual mistake as to the acreage, and therefore, it was immaterial whether the question be treated as having been raised before or after confirmation of the sale.

3. JUDICIAL SALES—*Abatement of Purchase Price—Sale of "At Least" 300 Acres—Confirmation of Sale with Reservation—Case at Bar.*—Where, however, upon confirmation of the sale the court reserved the question of acreage for further consideration, the purchasers had the same right to raise the question of abatment after such confirmation reserving the question which they would have had if the sale had not been confirmed.

Appeal from a decree of the Circuit Court of Smyth county. Decree for petitioner. Defendants appeal.

*Affirmed.*

The opinion states the case.

*W. S. Poage* and *Perkins & Moncure,* for the appellants.

*Hutton & Hutton* and *Jno. J. Stuart,* for the appellees.

KELLY, P., delivered the opinion of the court.

This is an appeal from a decree allowing the purchasers an abatement of the purchase price of a tract of land which was sold at a judicial sale as containing "at least 300 acres," but which in fact contained only 213.45 acres.

The land was formerly owned by Mrs. Mary F. Carter, and was known as the "Buchanan place." On August 20, 1904, Mrs. Carter entered into a contract for the sale of this land to her son, Charles Dale Carter, at the price of $13,000, to be paid in equal annual installments from October 20, 1904, with interest, represented by his purchase money bonds. Charles Dale Carter died on the 4th of January, 1907, leaving a widow, Sadie S. Carter (now Sadie S. Pechin), and one child, Henry Stuart Carter, an infant. He had never paid any part of the purchase price of the land. By his will his widow was to have his entire estate in fee simple if she should not remarry, or, whether she remarried or not, if the child should die before attaining the age of twenty-one years; but if she should remarry and the child should attain his majority, then and in such events the widow was to have the estate for life only, with remainder in fee to the child.

In 1908, Mrs. Mary F. Carter brought a general creditor's

suit against the executor of Charles Dale Carter and his wife and child, in which she alleged that his real estate consisted of two tracts of land, one known as the White-head tract of 561 acres, "assigned to him in a partition of the land which was owned by his father, Charles Dale Carter, Sr.," and the other "known as the Buchanan place * * * supposed to contain about 300 acres," being the land sold to him by the contract of August 20, 1904, above recited. The object of this suit was to settle the estate of the decedent, and especially to subject the Buchanan place to the satisfaction of the purchase money, which the complainant, Mrs. Carter, alleged was the first and only lien thereon.

The cause was referred to a commissioner for an account, and his report, among other things, showed that Charles Dale Carter owed Mrs. Sadie S. Pechin $4,180.08, the amount of two purchase money bonds on the Buchanan place, which she had paid to Mrs. Carter, and which had been assigned to her; that he owed Mrs. Mary F. Carter $12,794.90 for the balance of the purchase money, and that the two amounts last named constituted, respectively, the first and second liens on that property. In fixing the balance due Mrs. Carter, the commissioner allowed Charles Dale Carter's estate a credit for "the purchase price of 43.26 acres of land sold by Charles Dale Carter to C. F. Carter at $40.00 per acre for thirty-eight acres, and four and one half acres at $22.50 per acre."

The report showed other small debts against the estate, bringing the total indebtedness to the amount of $20, 519.35. The commissioner further reported that Charles Dale Carter died seized of two tracts of land, one being the 561-acre tract assigned to him in the partition of his father's estate, and "the other a tract of 300 acres and known as the Buchanan place."

This report was confirmed, and the court being of opinion "that the sale of the 300 acres of land known as the 'Buch-

anan place' would probably be sufficient to pay all of the
indebtedness of the said estate," appointed John W. Price
and B. F. Buchanan as special commissioners to sell the
same.

These commissioners advertised the land for sale, describ-
ing it as "containing about 300 acres * * * known as the
Buchanan place," and at the sale they expressly announced
that "the land was sold as containing at least 300 acres"
In their report to the court they stated that this announce-
ment was made "at the direction of Mrs. Sadie Pechin, who
was the widow of Charles Dale Carter." Mrs. Pechin, in
her testimony, denied that she gave any such direction, but
admits that Commissioner Price consulted her about the
acreage, and that she told him she supposed the tract con-
tained 300 acres; and Commissioner Buchanan, who at that
time represented the estate of Charles Dale Carter, testified
in substance that after a question had arisen as to the acre-
age, and had been somewhat generally discussed by the
prospective bidders, Mrs. Pechin was consulted in regard
to the acreage, and that the announcement in question was
made after such consultation with her. The report of sale
making the statement above recited as to the announce-
ment and representation of the acreage is signed by both
commissioners, and upon a careful review of the whole evi-
dence it seems clear that Mrs. Pechin's memory must have
been at fault upon the subject. But however this may be,
there is no dispute about the fact that the commissioners
actually sold the land "as containing at least 300 acres,"
and so reported to the court.

This sale was made on November 23, 1912, and J. S.
Pechin, the husband of Sadie S. Pechin, became the pur-
chaser at the price of $27,000, paying $6,750 cash, and exe-
cuting three bonds, each for a like amount, payable in eight,
sixteen and twenty-four months, with interest. On or
about April 14, 1913, J. S. Pechin entered into two con-

temporaneous written agreements with T. B. Porterfield and others, partners trading as Porterfield & Company. Under one of these agreements Porterfield & Company paid to Pechin $6,750 in cash with interest from the date of sale, and assumed his purchase money notes, and Pechin assigned and transferred to them the purchase of the Buchanan place made by him on November 23, 1912. The purchase and effect of this agreement is fully recited in the last paragraph thereof as follows: "The said parties of the second part (Porterfield & Co.) to take said purchase subject to all the rights and conditions imposed upon the said party of the first part (Pechin) in such sale, the same as if the said parties of the second part had been the purchasers of said land in their own right." The other agreement was supplemental to the one just mentioned, and after reciting the assignment of the purchase, and the further fact "that C. F. Carter or his assignees, R. M. Richardson, C. L. Clark and Ed. Clark, claim a portion of the land so purchased by the said party of the first part at said commissioners' sale, and it being probable that litigation will ensue as to a portion of said land," proceeded to provide "that in consideration of the sum of $1,000 paid by the parties of the second part to the party of the first part," the said party of the first part (Pechin) should bear the expense of such litigation.

On the 13th of September, 1913, C. F. Carter filed his petition in the cause, setting up the sale to Pechin and his assignment to Porterfield & Company, and alleging that the latter under their contract of purchase were claiming certain lands which belonged to the petitioner. To this petition Porterfield & Company filed a demurrer and answer, no copy of which, however, appears in the record before us.

On September 20, 1913, the court entered a decree which, after reciting the filing of the commissioners' report of

8

sale, the petition of C. F. Carter, the demurrer and answer
of J. S. Pechin and of Porterfield & Company to the peti-
tion, proceeded as follows: "It is adjudged, ordered and
decreed that the said report · be and is hereby confirmed,
but the confirmation of said sale is made without any prej-
udice to the rights of C. F. Carter as asserted in his said
petition, and without waiving any rights asserted by the
said respondents to the said petition in their demurrer and
answer this day filed. All matters relating to the petition
and the demurrer and answer thereto are reserved for
future consideration by the court."

During the pendency of the principal cause, two actions
at law were brought to determine certain boundary lines
between the plaintiffs therein and Porterfield & Company.
One of these actions was brought by R. M. Richardson and
others, and the other by C. F. Carter. These actions were
both decided in favor of the plaintiffs, with the result that
in one of them Porterfield & Company lost 32.4 acres and
in the other 34.7 acres of land which they were claiming
as a part of their purchase. These tracts appear to be
separate and distinct from the forty-three acre tract which
C. F. Carter held under a purchase from Charles Dale
Carter (Mrs. Mary F. Carter having joined in the deed as
a grantor), and for which a credit was allowed to Charles
Dale Carter's estate on his purchase money notes.

On June 24, 1918, Porterfield & Company filed their pe-
tition in the cause, setting up their contract with J. S.
Pechin and the two actions at law, with the result above
recited, and further alleging that upon a survey of the
Buchanan place they found that instead of containing 300
acres it contained only 213.45, making a shortage of 86.55
acres, and they prayed to be allowed an abatement of the
purchase price accordingly. J. S. Pechin and Sadie Pechin
answered this petition, depositions were taken, and upon
a hearing the court granted the prayer of the petition and

allowed the abatement. From the decree granting such re-- lief this appeal was awarded.

[1, 2, 3] There is considerable dispute and uncertainty as to the manner in which the shortage in acreage arose, and it is not possible to reconcile the respective contentions of the parties in this respect. For example, it is con-- tended on behalf of counsel for Porterfield & Company that the forty-three acres for which Charles Dale Carter was given credit upon the amount of his in- debtedness to his mother was originally a part of the Buchanan place, whereas counsel for Mrs. Pechin contend that this forty-three acres was never a part of that land, but was known as the Shannon place, and never had been included in the boundaries of the Buchanan land; and further, as illustrating the uncertainty as to the original boundaries of the Buchanan land, counsel for Porterfield & Company claim that the two tracts recovered in the ac- tions at law, and thereby lost to Porterfield & Company, had never been included in the Buchanan place, whereas counsel for Mrs. Pechin take the position that both of these tracts were originally parts of that land. A great deal of attention was devoted to these conflicting conten- tions, but in our view of the case, the questions thus aris- ing are wholly immaterial. There is no sort of dispute about the fact that the purchasers only got 213.45 acres, while the land was expressly represented at the sale to contain at least 300 acres, and that the sale thereof was confirmed upon a report of the commissioners showing this latter fact. The evidence clearly shows that at the time the sale was made there was uncertainty about the acreage, and the commissioners, after consulting with Mrs. Pechin, undertook to assure the purchasers that they would get 300 acres of land, and the court confirmed the sale by a decree which manifestly intended to reserve the question of acreage for future adjudication. Porterfield & Com--

pany, under their assignment from Pechin before confirmation, stood in all respects in the same position as if they had been the original bidders. They were at the sale and were the last parties to bid on the land before it was sold to Pechin, and we are entirely satisfied from the record that Mr. and Mrs. Pechin, Porterfield & Company, the commissioners and the court all understood that there was a question about the amount of land which the purchasers would get, and that the purpose of the court in making the reservation in the decree confirming the sale was to hold open for future determination the rights of the parties if the boundary should fall short from any cause, whether failure of title or deficiency in amount.

In these circumstances, we think the final disposition of the question by the court was entirely right and just. Surely a court of equity must stand by its contracts. It is undoubtedly the general rule that an increase or an abatement of the purchase price of land sold at a judicial sale will not be permitted for excess or deficiency in quantity after a confirmation of such sale, whether deficiency results from a defeat in title or a shortage in acreage, unless there by after-discovered fraud, misrepresentation or mutual mistake. *Watson* v. *Hoy,* 28 Gratt. (69 Va.) 710; *Blakemore* v. *Roller,* 110 Va. 719, 67 S. E. 377, 135 Am. St. Rep. 956. But this general rule cannot avail appellants anything for two very patent reasons. In the first place, the court expressly reserved the question, and the purchasers have the same right to raise it now which they would have had if the sale had not been confirmed; and, in the second place, to take the most favorable view of the evidence from the standpoint of the decedent's estate, there was the equivalent of a mutual mistake as to the acreage. Mrs. Pechin testified that she supposed the land contained 300 acres. If she did not expressly direct it to be sold that way, she certainly knew and approved of the announce-

ment made by the commissioners to that effect. The court itself became a party to the representation by confirming the commissioners' report which expressly mentioned that circumstance. Porterfield & Company, in good faith, and acting upon the representation of the commissioners, did all they could in asserting their claim for a 300 acre boundary. The result showed that all parties, including the court, had proceeded upon an erroneous assumption as to the actual acreage. In this view of the case it is immaterial whether the question be treated as having been raised before or after confirmation of the sale. *Watson* v. *Hoy, supra; Boschen's Ex'x* v. *Jurgens' Ex'r*, 92 Va. 756, 759, 24 S. E. 390.

The point is made that the estate of Charles Dale Carter ought to have relief against his vendor, Mrs. Mary F. Carter, if an abatement is allowed in favor of Porterfield & Company. This question was not disposed of by the lower court in any way except by its ruling upon an exception to J. S. Pechin's answer to the petition of Porterfield & Company, the court having sustained that exception on the ground that Porterfield & Company were in no wise concerned in the question. This ruling we think was correct, but we do not intend by anything said in this opinion, nor by the order which we shall enter in the cause, to preclude a further consideration of this question upon proper pleadings, if presented during the further conduct of the cause in the lower court. The decree complained of will be affirmed, but without prejudice to any right which the estate of Charles Dale Carter may have for an abatement of the purchase money by reason of the shortage in the acreage of the Buchanan place, and the cause will be remanded for further proceedings to be had therein not in conflict with the views herein expressed.

*Affirmed.*