# Wytheville.

## ORIGINAL AMPTHILL DEVELOPMENT CORPORATION v. CARROLL C. GATHRIGHT, ET ALS.

June 12, 1930.

Absent, Campbell and Holt, JJ.

The opinion states the case.

*Allen G. Collins* and *E. B. Thomason*, for the appellant.

*David Meade White*, *H. Carter Redd*, *M. J. Fulton* and *Daniel Grinnan*, for the appellees.

Epes, J., delivered the opinion of the court.

This is an appeal taken by the Original Ampthill Development Corporation from a decree entered by Circuit Court of Chesterfield county in a suit for the partition of the "Ampthill" tract of land lying in said county, instituted by Carroll C. Gathright and David Meade White, against Elizabeth J. Ford, Grayson B. Watkins, and others. In this suit Original Ampthill Development Corporation purchased that portion of the "Ampthill" tract lying west of the Richmond-Petersburg Turnpike.

The main question involved in this appeal is whether or not the Original Ampthill Development Corporation is entitled to an abatement in the purchase price of the land bought by it by reason of the fact that the land purchased by it in fact contains only seventy-one and twenty-eight hundredths acres instead of eighty-three and one-half acres.

W. O. Watkins formerly owned the "Ampthill" tract through which the Richmond-Petersburg Turnpike runs in a generally north and south direction.

Under his will twenty-one and thirty-eight hundredths undivided interest therein had passed to David Meade White, Carroll C. Gathright and certain others to whom, collectively, we shall refer as the White-Gathright-Fulton-Reed group, and seventeen and thirty-eight hundredths undivided interest had passed to Elizabeth J. Ford, Grayson B. Watkins and certain others to whom we shall refer as the Ford-Watkins group. The members of these two groups constituted the parties to said partition suit.

In February, 1927, Carroll C. Gathright and David Meade White instituted this partition suit against the other parties in interest seeking partition of the whole "Ampthill" tract. In the bill filed the portion lying on the east side of the Richmond-Petersburg Turnpike is described as "containing three hundred and ninety-seven acres more or less"; and the portion lying on the west side of the Richmond-Petersburg Turnpike as "consisting of seventy acres, more or less, near stop fifteen on the Richmond-Petersburg Electric Line, touching the lands of Agnes B. Winfree, Ben Brown, Lena Watkins, and the Atlantic Coast Line Railroad, and others."

During the pendency of this suit, by the consent of all parties, that portion of the "Ampthill" tract lying east of the Richmond-Petersburg Turnpike was sold and conveyed to DuPont Rayon Company, Incorporated, and is not involved in this bill.

About April 25, 1927, W. W. LaPrade & Bro. prepared a map (it does not appear for whom) which is denominated on its face as "a sketch of Ampthill" and is thereon stated to have been "compiled from old surveys." On this sketch the portion lying west of the turnpike is shown as containing eighty-three and one-half acres.

This sketch map seems to have been known to all of the owners of the land, and to the Original Ampthill Development Corporation, or to their respective representatives in the transaction here involved. The parcel of land on the west of the turnpike was greatly increased in value by the location of the plant of the DuPont Rayon Company on the eastern portion of the "Ampthill" tract; and the owners were in disagreement as to whether it should be sold or not and as to the price at which they would be willing to sell it. The White-Gathright-Fulton-Redd group desired to sell. The Ford-Watkins group did not desire to sell.

David Meade White and those represented by him owned eighteen and thirty-eight hundredths plus four and six-tenths of one and thirty-eight hundredths undivided interest in this land. Some time during the spring of 1928 Berry L. Stainback, who was connected with L. W. McVeigh, Incorporated, a real estate agency, called on Mr. White with a view to acquiring his undivided interest and that of those represented by him in the portion of the "Ampthill" tract lying west of the turnpike. When Stainback first approached White he did not disclose the name of his, Stainback's, client. However, the negotiations conducted by Stainback were being conducted for Mr. F. V. Berry, who was at that time arranging for the organization of the Original Ampthill Development Corporation, which was later organized and of which Mr. Berry became the secretary.

During these negotiations Mr. White showed Stainback the sketch map compiled by W. W. LaPrade & Bro. on which the portion of the "Ampthill" tract lying west of the turnpike is shown as containing eighty-three and one-half acres; and later Stainback and Berry went to the office of LaPrade & Bro. and there

saw an old plat similar to the one exhibited by White, which indicated that the tract lying west of the turnpike contained eighty-three and one-half acres. Throughout the negotiations for the sale of the land to Berry or the Original Ampthill Development Corporation, White constantly referred to this tract of land as containing eighty-three and one-half acres. After some negotiations with reference thereto, Mr. Stainback submitted to Mr. White an offer from his client, Mr. F. V. Berry, for the purchase of twenty and thirty-eight hundredths undivided interest in said land, which was in the form of a contract signed by Mr. Berry, dated April 30, 1928, the material parts of which are as follows:

"This agreement made this 30th day of April, 1928, between devisees under the will of W. O. Watkins, deceased, their heirs and assigns, owners of twenty and thirty-eight hundredths undivided interest in the hereinafter described property, parties of the first part and F. V. Berry, of the city of Richmond, Virginia, party of the second part.

"Witnesseth: That the said parties of the first part do hereby bargain and sell, and covenant to convey * * * * * * * to the said party of the second part or his assigns the following property, to-wit: Twenty- and thirty-eight hundredths undivided interest in all that certain tract of land containing eighty-three and one-half acres more or less, situated in Manchester magisterial district, county of Chesterfield, Virginia, on the western side of the Richmond and Petersburg Turnpike between stops fourteen and fifteen, and running back westwardly to the right of way of the Atlantic Coast Line Railway, opposite the northern part of "Ampthill" tract recently sold to the DuPonts, at the price of $400.00 net per acre in gross for the whole thirty-eight and thirty-eight hundredths, and upon the following terms, viz, all in cash. * * * * * * * * * * .

"The parties of the first part agree to sell and convey their respective undivided interests aggregating twenty and thirty-eight hundredths in the above property to be prorated at the rate of $400.00 net per acre in gross, and this contract is void unless all agree to sell as above."

As this offer was originally drafted it read eighty-two and one-half acres, but was changed by Mr. White to read eighty-three and one-half acres, apparently before it was signed.

In its petition for an abatement of the purchase price, the Original Ampthill Development Corporation alleges that it "became the purchaser on the basis set forth in the said offer signed by F. V. Berry, and which was consummated by decree of August 7, 1928."

Mr. White took up said offer with his clients who, with himself, owned eighteen and thirty-eight hundredths plus four and six tenths of one and thirty-eight hundredths undivided interest in the property; and he and they agreed to sell their undivided interest on basis of said offer.

On May 23, 1928, Mr. White wrote a letter to L. W. McVeigh, Incorporated, the material parts of which are as follows:

"Gentlemen:

"Your Mr. Steinback has been to see me a number of times with reference to buying an undivided interest in that tract of land in Chesterfield county, Virginia, containing eighty-three and one-half acres, which belongs to the devisees of the late W. O. Watkins and their grantees * * * * * * * * * Subsequently, Mr. Steinback submitted an offer in writing of $400.00 net per acre all in cash for twenty and thirty-eight hundredths undivided interest in the property in gross.

(Then follows a statement that White cannot speak for but eighteen and thirty-eight hundredths plus four and six tenths of one and thirty-eight hundredths undivided interest, and that Mr. Fulton and Mr. Redd represent clients owning two and thirty-eight hundredths plus two and six tenths of one and thirty-eight hundredths.)

"I desire to know, without delay, whether or not your client will take such interest as we can control upon the same terms set out in his offer of April 30, 1928. If so, I shall take up the matter with the court and endeavor to arrange to have the undivided interest conveyed to him. If he does not want it then there is no reason for further negotiations."

Mr. Stainback then saw Mr. White and asked him to see Mr. Redd and Mr. Fulton and get them to have their client agree to sell their interest upon the same terms and conditions. White did so, and the parties represented by Mr. Fulton and Mr. Redd also agreed to sell their undivided interest on the same terms set forth in said offer from F. V. Berry dated April 30, 1928.

On June 11, 1928, Carroll C. Gathright and other members of the White-Gathright-Fulton-Redd group, owning twenty and thirty-eight hundredths undivided interest in said land, filed their petition in said partition suit in which they set forth said offer made by Berry and its acceptance by them; and prayed that a commissioner be appointed by the court to convey their said twenty and thirty-eight hundredths undivided interest in said property to F. V. Berry upon his paying to court the purchase price therefor. With this petition the said offer of F. V. Berry was filed as an exhibit.

A decree was prepared for entry confirming this sale

and appointing commissioners to make conveyance of said twenty and thirty-eight hundredths undivided interest in said property to F. V. Berry. Consent to the entry of this draft as the decree of the court was endorsed thereon by counsel for the several parties and the draft was presented to the court for entry on June 23, 1928, and the judge endorsed it for entry. But after the decree had been endorsed for entry Mr. Berry had the title to the property examined, and it was reported to him that the court, on the proceedings then had, could not confirm a sale of an undivided interest in said land; and with the consent of the vendors, the vendee, and the court the decree was withdrawn before actually spread upon the records; and the judge noted thereon that it should not be entered.

After bringing said suit on to be heard on said petition of Carroll C. Gathright and others, and reciting the desire of the petitioners "to sell their undivided interests in the remaining portion of Ampthill which is a tract of land west of the Richmond-Petersburg Turnpike, containing eighty-three and one-half acres, more or less," parts of said draft for decree read as follows:

"It further appearing that F. V. Berry, of Richmond, Virginia, has offered in writing to purchase the undivided interests of petitioners in the said land, containing eighty-three and one-half acres, more or less, at the rate of $400.00 per acre, and pay all of the purchase price in cash provided he could buy the undivided interests of all of the petitioners, which is twenty and thirty-eight hundredths of the whole, that the purchase should be considered as a sale in gross, that is to say, the purchase price shall be computed on the whole tract as containing eighty-three and one-half acres at the rate of $400.00 per acre, with the understanding that the sale shall be regarded and treated as

a sale in gross and not by the acre, so that the said F. V. Berry would get twenty and thirty-eight hundredths undivided interest in the said land without regard to the actual number of acres in the said tract * *.

"The court, by and with the consent of the said F. V. Berry and the petitioners, doth order that the said F. V. Berry do deposit in the Mechanics and Merchants Bank, South Richmond, Virginia, to the credit of this court in this cause the sum of $17,578.94, that being the full purchase price for the twenty and thirty-eight hundredths undivided interests of petitioners in the said land, computed at the rate of $400.00 per acre on the whole tract as containing eighty-three and one-half acres, which is the quantity of land agreed for the purpose of calculating the amount of the purchase money, with the understanding, however, that the sale is made in gross and not by the acre.

"The court doth further order that upon the deposit of the said sum of $17,578.49 in accordance with this order, David Meade White and H. Carter Redd and M. J. Fulton, who are hereby appointed special commissioners for the purpose, shall prepare, execute, acknowledge and deliver to the said F. V. Berry, or to such person, firm or corporation as he shall designate in writing, a deed with special warranty of title, conveying to him all of the right, title, and interest of every kind and description of the said David Meade White, Carroll C. Gathright" (and other named parties), "being that portion of the "Ampthill" tract lying west of the said Richmond-Petersburg Turnpike of which W. O. Watkins died seized and possessed, containing eighty-three and one-half acres, more or less, and is a portion of the same land mentioned and described in the said bill. The conveyance shall, however, be in gross and not by the acre."

In its petition for abatement of the purchase price, the Original Ampthill Development Corporation alleges that, when this decree was withdrawn, "it was understood that necessary steps would be taken to make the proceedings conform to the law, and accordingly this respondent (Original Ampthill Development Corporation) became the purchaser on the basis set forth in said offer signed by F. V. Berry, and which was consummated by decree of August 7, 1928."

Subsequently, "Carroll C. Gathright and David Meade White, on behalf of themselves and by and with the consent of all the parties to this suit," filed their petition setting forth that the Original Ampthill Development Corporation had submitted an offer to all of the owners of said tract of land "to purchase the said land in gross as a tract containing eighty-three and one-half acres and to pay therefor at the rate of $400.00 net per acre, computed on eighty-three and one-half acres, regardless of the number of acres contained in the said tract;" that under said offer those of the owners who desired to be paid in cash were to receive cash for their interest and those who desired stock in the Original Ampthill Development Corporation in payment of their interest were to receive stock in the corporation at the par value of $100.00 per share; and that the White-Gathright-Fulton-Redd group, owning twenty-one and thirty-eight hundredths undivided interest, desired to receive cash for their interest and the Ford-Watkins group, owning seventeen and thirty-eight hundredths, to receive stock in the corporation for their interest. This petition prayed that said offer be accepted by the court and the property sold and conveyed by the court to the Original Ampthill Development Corporation.

On August 7, 1928, "by and with the consent of all parties, by their attorneys," the court entered its decree by which it adjudged, ordered and decreed, so far as is here material, as follows:

"(2) That the Original Ampthill Development Corporation has offered to purchase the said land, hereinafter described, in gross as a tract containing eighty-three and one-half acres and pay therefor at the rate of $400.00 net per acre, regardless of the number of acres contained in the said tract, the offer being to purchase the said land in gross and not by the acre. That the said offer of the Original Ampthill Development Corporation to buy the said tract of land upon the terms and conditions aforesaid is hereby accepted."

(3) That the Original Ampthill Development Corporation do issue to each of the Ford-Watkins group, which own in the aggregate seventeen and thirty-eight hundredths interest in said land, capital stock of the corporation at $100.00 per share "for his or her interest in the said land calculated at the rate of $400.00 per acre net on eighty-three and one-half acres, and upon the issue and delivery of the said stock to the said parties, the same shall be in full payment of his or her interest in the said land.

(4) That the interest of the other parties to this suit, the White-Gathright-Fulton-Redd group, naming them, is twenty-one and thirty-eight hundredths undivided interest and that "the said corporation has agreed to pay them cash for their twenty-one and thirty-eight hundredths undivided interest in the said land at the rate of $400.00 per acre net computed on eighty-three and one-half acres, or the sum of $18,457.90, and it shall do so."

(5) That said corporation deposit the sum of $18,457.90 in the Mechanics and Merchants Bank of

Richmond, and "the sum so deposited shall be in full payment of the twenty-one and thirty-eight hundredths undivided interest in the said land owned by the parties named in paragraph (4) of this decree.

"(6) That when said sum of $18,457.90 shall have been so deposited the special commissioners hereby appointed shall convey to said Original Ampthill Development Corporation, with special warranty, the following described real property, to-wit: "All that certain tract or parcel of land lying * * * in Chesterfield county, Virginia, on the western side of the Richmond-Petersburg Turnpike, between stops fourteen and fifteen, and running back westwardly to the right of way of the Atlantic Coast Line Railway, and being that portion of the "Ampthill" tract lying west of the said Richmond-Petersburg Turnpike, of which W. O. Watkins died seized and possessed, containing eighty-three and one-half acres, and is a portion of the land mentioned and described in the bill in this cause, but the conveyance shall, however, be in gross and not by the acre."

Having had an examination of the title of that portion of the "Ampthill" tract lying west of the turnpike made prior to August 7, 1928, on or about August 21, 1928, the appellant had W. W. LaPrade & Bro. (who had compiled said sketch map from old surveys) make an actual survey thereof. It was found by said survey, a plat of which is filed as a part of the record, that this tract of land contained only seventy-one and twenty-eight hundredths acres instead of eighty-three and one-half acres as shown on said sketch map.

With an immaterial exception on the southern boundary the calls for natural boundaries and adjacent landowners are without exception the same on both the sketch map and the plat of the survey, and agree

with the description contained in the bill of that portion of the "Ampthill" tract lying west of the turnpike. But there are material differences in the length of the several boundary lines as shown on the sketch map and the plat of the survey. The bearings of the courses of the boundaries are not indicated on the sketch map.

Beginning at the point at which the right of way of the Atlantic Coast Line Railroad Company intersects Grindall creek (which is the northwestern corner of the land here involved), and taking no cognizance of a two and five-tenths foot wide by 233-foot long offset in the line between this tract and the lands of said railway company, the comparable lines of the tract of land here involved as shown on said sketch map and on the plat of said survey are as follows:

| LINE | PLAT OF SURVEY | | SKETCH MAP |
|---|---|---|---|
| | *Feet* | | *Feet* |
| 1. Western line along R. R......... | S 12°49½' | W 1,868.70 | 1815 |
| 2. Southern line from R. R. to Pike.., | S 81°36' | E 2,168.35 | 2260 |
| 3. East lines along Pike........... | N 0°31½' | E 1,009.12 | |
| | N 0°39' | E 461.79 | |
| | | 1,470.91 | 1716 |
| 4. Northern line from Pike to county road along Brown............. | N 60°11' | W 1,018.03 | 1105 |
| 5. Western lines along county road to Grindall Creek............. | S 6°20' | W 654.89 | |
| | S 9°34' | W 214.60 | |
| | | 869.49 | 1320 |
| 6. Northeasterly along creek from county road to beginning, broken line.................. | aggregate | 1,267.04 | not given |

On October 8, 1928, the appellant, after a rule had been issued against it by the court, deposited the full sum of $18,457.90 in bank in accordance with the decree of the court of August 7, 1928, and on October 9, 1928, filed its answer to said rule in which it peti-

tioned the court to enter a decree rebating and ordering repaid to appellant a prorata part of the purchase price because of the fact that the tract of land purchased by it had been found to contain only seventy-one and twenty-eight hundredths acres instead of eighty-three and one-half acres.

Upon a hearing of said petition for abatement of the purchase price, the court, by its decree entered November 1, 1928, decreed: "That the sale of the said land to the Original Ampthill Development Corporation was a sale in gross and not by the acre, and the said corporation is not entitled to any abatement of the purchase money for any deficiency in the quantity of land in the said tract."

In this decree the court also ordered the distribution of all of said sum of $18,457.90 paid into court by appellant, except $2,817.22, the amount of abatement in the purchase price for said twenty-one and thirty-eight hundredths interest which the appellants claimed to be entitled to have rebated. This sum was ordered held in bank undistributed as the appellant had given notice of its intention to appeal; but the court further decreed that the Original Ampthill Development Corporation "shall be responsible for interest upon the said sum of $2,817.22 at the rate of six per cent per annum from the 8th day of October 1928, until the same is distributed, in case this decree is affirmed by the Supreme Court of Appeals, or an appeal therefrom is denied by said court."

The Original Ampthill Development Corporation appeals from so much of said decree of November 1, 1928, as decrees that it is not entitled to an abatement in the purchase price of said tract of land, and that it shall be liable for interest at six per cent per annum on said

sum of $2,817.22 from October 8, 1928; and also from so much of the decree of August 7, 1928, as orders the special commissioners therein appointed to convey said land to the appellant as containing eighty-three and one-half acres instead of seventy-one and twenty-eight hundredths acres.

The calls for natural boundaries and adjacent land owners are, with an immaterial exception, along the southern boundary the same on both said sketch map and the plat of said survey. There is no allegation or proof that the location of the several boundary lines as they run on the ground were not known to the appellant prior to the decree of August 7, 1928, and especially is there no intimation that the actual location of the line between the "Ampthill" tract and Benj. Brown was not so known. On the contrary, in reply to a question by the court counsel for appellants expressly stated that there was no mistake as to the location on the ground of the boundaries of the "Ampthill" tract on the west side of the turnpike. Nor is there any contention here that the appellant thought or had reason to think that it was purchasing under said offer and said decree of August 7, 1928, any land not embraced within the boundaries as shown on the plat of said survey. The gravamen of the complaint of the appellant is that there are in fact only seventy-one and twenty-eight hundredths acres within the boundaries instead of eighty-three and one-half acres.

The appellant alleges that the difference in acreage as shown on the sketch map and on the plat of the survey is due to the fact that W. W. LaPrade & Bro., in compiling said sketch map from old surveys failed to take any cognizance of any of two deeds, one made in 1888 and the other in 1891, from W. O. Watkins to

Benj. Brown, conveying two and nine-tenths acres and five acres, respectively, of the northern end of the portion of the "Ampthill" tract lying west of the turnpike.

The land conveyed by these two deeds it is clear lies just north of the land herein purchased by appellant and the plats attached to these deeds show that the aggregate area of land conveyed by the two deeds had a frontage of 247.5 feet on the west side of the turnpike and ran back to the county, or court house, road, by which it is bounded for more than 450 feet.

If line three (along the turnpike) and line five (along the county road) as shown on the plat of said survey be extended in a straight line northwardly along these roads 245.09 feet and 450.51 feet, respectively, said lines three and five so extended will be the same length, respectively, as the corresponding lines (3 and 5) shown along these roads on said sketch map, and the northern ends of these extensions be connected by a new line, the bearing and length of this new line (reading from the turnpike end) will be approximately N 49° 45' W 1,096 feet. This corresponds very closely to the bearing of the northern line of the more northerly of the two tracts conveyed by W. O. Watkins to Benj. Brown, the two and nine-tenths acre tract conveyed in 1888, which reads N 49° 50' W 16.72 chain (1103.5 feet); and the additional area enclosed will contain approximately seven and eighteen hundredths acres as compared with the aggregate of seven and nine-tenths acres conveyed by Watkins to Brown in said two deeds.

It would appear that in compiling said sketch map from the old surveys the compilers have failed to deduct from the old surveys the two parcels of land, or the greater part thereof, conveyed by Watkins to Brown.

But this only accounts for between seven and twenty-eight hundredths and seven and nine-tenths acres of the difference in acreage of the two plats. The residue, or the greater part of the residue of the difference is apparently due to the fact that the southern line of the tract (line 2), running from the railroad company's right of way to the turnpike, is shown on the sketch map as being ninety-one and sixty-five hundredths feet longer than it is found to be by actual survey. This difference in east and west width appears to prevail throughout the two plats and if so, this accounts for approximately three and seventy-nine hundredths acres of the twelve and twenty-two hundredths acre difference. To what the difference in the length of line 2 as shown on the two plats is due may not be determined from the record.

In its said petition for abatement of the purchase price the appellant makes three charges as the basis of its prayer for an abatement in the purchase price:

1. That the contract was a sale by the acre. The allegations with reference to which are as follows:

"The respondent charges that under said purchase this respondent was to pay for said tract of land at $400.00 per acre net for the actual quantity as shown by proper survey which is shown to be seventy-one and twenty-eight hundredths acres." * * * * * * * * *

"All of the negotiations were based upon a price of $400.00 net per acre and with the assumption that the tract contained eighty-three and one-half acres, more or less. It was understood that the purchaser should take all of the land in that tract and respondent (Original Ampthill Development Coporation) under-

stood that if the tract had an excess of eighty-three and one-half acres, that respondent would have to take the same and if there was a deficit that he would still have to take the land in gross as it appeared and the price to be paid therefor was expressly designated as $400.00 net per acre, regardless of the number of acres which may be received."

2. That there was a mutual mistake of the parties as to the number of acres in the tract upon which mistake both parties acted in negotiating the sale and purchase, both being misled by the fact that the sketch map compiled from old surveys included therein seven and nine-tenths acres of land conveyed by Watkins to Brown in 1888 and 1891, and showed the tract then belonging to the owners to contain eighty-three and one-half acres instead of seventy-one and twenty-eight hundredths acres as is the fact.

3. That while representing the vendors, White exhibited to Stainback and Berry, the representatives of the appellant, said sketch map showing the acreage of the "Ampthill" tract west of the turnpike to contain eighty-three and one-half acres, and misrepresented to appellant through them that the tract contained eighty-three and one-half acres, when in fact it contained only seventy-one and twenty-eight hundredths acres, upon which misrepresentation the appellant relied in making purchase of said land.

Appellant's assignments of error to the action of the court in refusing to rebate the purchase price charge that the court erred because: (1) the sale was a contract of sale by the acre; (2) there was a mutual mistake by the seller, the buyer and the court; (3) the seller misrepresented the quantity and the buyer relied upon the misrepresentation.

The statement of the case itself bespeaks the decision of the case.

■ The contract of sale as set forth in the decree of August 7, 1928, is not susceptible of the construction which the appellant seeks to put upon it. The offer submitted by F. V. Berry, upon the basis of which the appellant alleges the sale was made, and the language of the decree stating the terms of the contract, state clearly and unambiguously an offer to purchase in gross and not by the acre; and a contract made for the purchase in gross and not by the acre; and the negotiations and proceedings had prior to the entry of the decree of August 7, 1928, show plainly and unmistakably that both the owners of the land and the purchaser in entering into said contract of sale intended to enter into a contract of hazard with reference to the acreage being sold and purchased.

■ This being true, it is immaterial whether or not the sellers or the buyer, or both, were mistaken as to the number of acres in the tract. There was no mistake as to the actual location of the boundaries of the tract, and the very gist of a sale of a tract of land in gross is that it is a sale of the land within the bounedairs of the tract at a fixed price regardless of the fact that either the vendor or the vendee, or both of them, may prove to have been mistaken as to the acreage.

■ There is no allegation or proof of a misrepresentation as to the acreage of this tract knowingly and intentionally made by the owners, or their representative, to the appellant or its representatives for the purpose of deceiving and defrauding the purchaser; and the negotiations leading up to the sale, the circumstances surrounding the sale, the description of the portion of the "Ampthill" tract contained in the bill in the suit in

■

which it was sold, the fact that the appellant had an examination of title made which included an examination of the proceedings in this suit, and the allegations of the appellant in its petition for abatement of price as to its understanding of the contract of sale, as well as the contract entered into by the appellant, all negative the allegation that the appellant relied upon or was induced to enter into the contract for the purchase of this tract by either the statement on the old sketch map showing the tract to contain eighty-three and one-half acres or the references of Mr. White to the tract as containing eighty-three and one-half acres.

The negotiations the appellant had with Mr. White clearly showed to appellants that he (White) in acting for himself and his clients was unwilling to rely upon the correctness of the sketch map compiled from the old surveys which showed eighty-three and one-half acres in the tract, and insisted upon a sale in the gross regardless of the number of acres there might be in the tract. The price was derived by a calculation based upon eighty-three and one-half acres, and is so stated to have been derived; but it is made unmistakably plain that they were not willing to enter into a contract based upon the correctness of any representation or assumption that the tract contained eighty-three and one-half acres. The appellant had its own examination of title made prior to the entry of the decree of August 7, 1928, and it alleges that it understood that it "was to pay for said tract of land at $400.00 per acre net for the actual quantity as shown by proper survey," and that the price therefor was fixed at $400.00 per acre "regardless of the number of acres which might be received" by it. These allegations are wholly incon-

sistent with its allegations that in entering into this contract it relied upon representations of the owners that the tract contained eighty-three and one-half acres.

It is true that the length of the east and west lines along the Turnpike and the county road are shown on said sketch map as being longer than they are in fact, and of sufficient length to include therein approximately, if not all, the seven and nine-tenths acres conveyed by W. O. Watkins to Benj. Brown, and that a portion of the difference in acreage as shown on said sketch map and on the plat of the actual survey is due to this mistake upon the part of the compilers of the sketch map. But it is not contended that the purchaser was misled thereby as to where the line of Benj. Brown ran on the ground, or that there was any mistake as to the location on the ground of the northern boundary line between this tract and the land of Brown or of any of the other lines of the tract here involved, or that the purchaser thought that he was buying or the sellers represented they were selling any land not included within the boundaries as shown by the plat of the actual survey. On the contrary, it was expressly stated by counsel for appellant upon the argument of this case that there was no contention that there was any mistake as to where the lines of the tract purchased by appellant ran on the ground.

The appellant will receive, under a conveyance to it by the special commissioners appointed for the purpose by the court, all the land lying within the boundaries which were within the contemplation of the parties, which are the boundaries as shown on the plat of said survey. It has contracted to purchase this boundary of land in gross at a fixed price. Such mutual mistake as to the acreage as may here be said

to have existed, if any may be said to have existed, does not entitle the appellant to an abatement of the purchase price. No fraud has been practiced upon the appellant by the sellers. If the showing of said sketch map to the representatives of appellant by Mr. White and his reference to the tract as containing eighty-three and one half acres may be construed as misstatements by him (White) as to the acreage in the tract, the facts in the case show that the appellant in entering into this contract neither had the right to rely thereon nor relied thereon as being correct, but expressly assumed the risk as to the acreage in the tract.

Under the circumstances in this case the delay in making distribution of the $2,817.22 which the appellant is contending should be rebated to it has been caused by the appellant; and the decree of the court that the appellant shall, in addition to such interest as may be received thereon from the deposit thereof in bank, pay such sum as will make the interest received thereon equal to six per cent per annum from October 8, 1928, until the same shall be distributed, is just and right and is affirmed.

As to the assignment of error that the court erred in directing the special commissioners to make conveyance of this tract as containing eighty-three and one-half acres instead of seventy-one and twenty-eight hundredths acres, it does not appear that after the ascertainment of the actual acreage any request has been made of the lower court to so modify its decree as to require said special commissioners to convey the property as containing seventy-one and twenty-eight hundredths acres instead of eighty-three and one-half acres; but upon the further proceeding in this cause the lower court, if so requested by the appellant and no good cause be shown in opposition thereto, should

enter a decree directing the special commissioners appointed by its decree of August 7, 1928, to make conveyance of said tract by the description thereof contained in the plat of the actual survey thereof made by W. W. LaPrade & Bro., in August, 1928.

The decrees appealed from are affirmed and the cause remanded to the lower court to be further proceeded with in accordance with the views herein expressed.

*Affirmed.*