## Richmond

# R. Ralph Branton And Margaret H. Branton

# v.

# Elsie Rodgers Jones

September 11, 1981.

Record No. 790937.

Present: Harrison, Poff, Thompson, JJ., and Harman, S.J.

*Joshua Pretlow, Jr. (Carl E. Eason, Jr.; Pretlow, Pretlow & Moore, P.C.,* on brief), for appellants.

*G. Blair Harry (Hunter & Harry,* on brief), for appellee.

PER CURIAM.

In this case we determine whether the trial court, after its confirmation of a judicial sale of property sold in the gross and not by the acre, erred in setting aside the sale because of a unilateral mistake concerning acreage.

J. D. Parker, Jr., sought partition of property located in Suffolk and owned jointly by him and Elsie Rodgers Jones. Parker and Jones acquired title to the land by the will of Elma Rodgers. The deed conveying the property to Elma Rodgers described it as bordering several estates and individuals and "containing twenty-six (26) acres, more or less."[1] Records in the city assessor's office, however, indicated that the property had been assessed for tax purposes as a fifteen-acre tract. The Commissioner in Chancery reported that the acreage involved was uncertain. He recommended that if the land was sold at public auction for partition, this discrepancy in acreage be set out in "advertising, at sale, and within the deed of conveyance." He also suggested that the sale be "in gross, not by the acre." Although Parker, Jones, and their attorneys were aware of the variance, no survey of the property was had or any effort made to have the true acreage ascertained prior to the sale.

The trial court ordered the property sold for partition thereof. Three advertisements of the sale recited the property's description as given in the deed from Lucille Rodgers Parker to Elma Rodgers, including the twenty-six acre reference, and noted as one of the terms of sale that the "[s]ale will be in gross and not by the acre." A fourth newspaper advertisement noted these facts and included a copy of a map from the city assessor's office. At the sale, it was announced that the property would be sold in gross and that according to the records in the city assessor's office it consisted of approximately fifteen acres. The purchasers at the judicial sale, R. Ralph and Margaret H. Branton, bid and agreed to pay $27,300.00 for the property, and the court subsequently con-

---

[1] The description in the deed from Lucille Rodgers Parker to Elma Rodgers, dated August 30, 1954, is as follows:

All that certain piece, parcel or tract of land situate and being in the Village of Whaleyville in Whaleyville Magisterial District, Nansemond County, Virginia, and known as the 'Jack Milteer homeplace and farm', the said property being situated on the West side of Main Street in Whaleyville and adjoining the lands of the estate of W. P. Riddick, the estate of P. A. Parker, the estate of R. B. Hayes, the estate of J. E. Edwards, the estate of F. R. Ellenor and the lands of G. C. Brothers, Maggie Cheeks and F. O. Clark.

The above described property containing twenty-six (26) acres, more or less.

firmed their purchase. Counsel for Parker and Jones, having served as special commissioners, requested such confirmation.

Prior to sale, Ralph Branton made an investigation and discovered that the tract being offered for sale as containing twenty-six acres, more or less, consisted of two parcels, one approximately 9.69 acres, and the other approximately 15 acres. The 9.69 acre parcel was not contiguous to the 15 acre parcel, but did lie in proximity thereto. Although Branton did not inform the parties to the partition suit, or their counsel, of his discovery, he did not conceal the source of his information or misrepresent the true acreage of the property. After the sale had been confirmed, Parker and Jones learned of the true acreage of the property involved, and within one year Elsie Rodgers Jones petitioned the court to set aside the judicial sale. The trial court received evidence, set aside the sale, and granted the Brantons the right to rescind the entire sale or to accept a conveyance of fifteen acres only and pay their bid of $27,300.00. In this appeal, the Brantons challenge the trial court's decision.

Code § 8.01-113 provides that the title of a purchaser at a judicial sale shall not be disturbed unless the sale is set aside within twelve months of its confirmation. This statute, however, does not specify the grounds upon which a judicial sale can be set aside. Prior to confirmation, a court can exercise considerable discretion in deciding whether to confirm a sale, but "[a]fter confirmation the purchaser at a judicial sale is as much entitled to the benefit of his purchase as a purchaser *in pais,* and the sale in the one case can be set aside only on such grounds as would be sufficient in the other." *Va. Fire & Marine Ins. Co. et al.* v. *Cottrell,* 85 Va. 857, 861, 9 S.E. 132, 133 (1889); *accord, Interstate C. Co.* v. *Eaton, R. & Co.,* 131 Va. 162, 171-72, 108 S.E. 881, 884 (1921). After confirmation, a judicial sale cannot be set aside "except for fraud, mistake, surprise, or other cause for which equity would give like relief, if the sale had been made by the parties in interest, instead of by the court." *Traylor* v. *Atkinson,* 130 Va. 548, 555-56, 108 S.E. 199, 202 (1921), quoting *Berlin* v. *Melhorn,* 75 Va. 639, 641 (1881).

Not every mistake merits the setting aside of a previously confirmed judicial sale. The mistake must be mutual, *Redd and Wife* v. *Dyer and als.,* 83 Va. 331, 335-36, 2 S.E. 283, 285-86 (1887), unless it was "induced by the fraud or culpable negligence of the other." *Long & al.* v. *Weller's Ex'or & als.,* 70 Va. (29

Gratt.) 347, 353 (1877); *accord, Logwood* v. *Holland,* 131 Va. 186, 195, 108 S.E. 571, 574 (1921). We have repeatedly utilized the "mutual mistake" rule in connection with cases involving excesses or deficiencies in acreage. *See, e.g., Pechin* v. *Porterfield,* 128 Va. 53, 61, 104 S.E. 695, 698 (1920); *Blakemore* v. *Roller,* 110 Va. 719, 722, 67 S.E. 377, 379 (1910); *Watson* v. *Hoy & als.,* 69 Va. (28 Gratt.) 698, 711 (1877). The appellee concedes that the mistake at issue here was unilateral. It is equally clear that the mistake was not induced by the fraud or culpable negligence of the Brantons. Ralph Branton's mere silence concerning the correct boundaries and acreage of the property being offered did not constitute fraud and does not justify the setting aside of the sale. *Merchants Bank of Baltimore and als.* v. *Campbell and als.,* 75 Va. 455, 460 (1881); *accord, School Board* v. *Smith,* 134 Va. 98, 109, 113 S.E. 868, 871 (1922). Under this well-established standard, the appellee is not entitled to have the sale set aside because of the mistake made by the sellers in this case.

■ That the sale was in gross, not by the acre, buttresses our conclusion that the trial court erred in setting aside the sale. Contracts for the sale of land in gross are contracts of hazard. The parties to such a sale assume the risk of a deficiency or excess in the number of acres in the property. *Cunningham* v. *Millner,* 82 Va. 526, 530 (1886). Where the parties intend a contract of hazard regarding a property's acreage, "it is immaterial whether or not the sellers or the buyer, or both, were mistaken as to the number of acres in the tract." *Ampthill Corp.* v. *Gathright,* 154 Va. 557, 577, 153 S.E. 897, 904 (1930).[2] *See also Huffman* v. *Landes,* 163 Va. 652, 177 S.E. 200 (1934); *Foley* v. *M'Keown,* 31 Va. (4 Leigh) 627 (1833). Where property is sold in gross, the seller assumes the risk that the actual acreage might exceed his estimate. "It was not only the duty of the purchasers to look to the records and papers in the causes to see what land they were purchasing, but it was [also] the duty of [those] claiming an interest in the proceeds of the sale to have informed themselves of what was being sold." *Blakemore,* 110 Va. at 721-22, 67 S.E. at 378.

---

[2] *Cf. Wardell* v. *Birdsong,* 115 Va. 294, 78 S.E. 564 (1913), where we held that a bilateral mistake concerning acreage was so gross that the sale would constitute a fraud and thus the sale could be set aside even though it was a sale in gross, not by the acre.

In *Wardell,* the actual acreage was less than one-half the amount the sellers innocently represented to exist. The discrepancy in this case in not nearly as great. Furthermore, the present case, unlike *Wardell,* involves a unilateral mistake.

In the case under review, the public generally, and prospective purchasers in particular, were clearly notified that a discrepancy existed between the acreage stated in the deed through which the sellers' devisor acquired title and the acreage shown in the tax assessor's office. Advertisements of the sale evidenced an intent by Jones and Parker to sell the land "in gross and not by the acre." Indeed, the sellers, the Commissioner in Chancery, and the Special Commissioners could not have gone to greater lengths to alert a potential purchaser of the discrepancy ánd to encourage any would-be buyer to conduct his or her own independent investigation of the property. The record reveals that the Brantons undertook such an investigation and ascertained the true location, boundaries, and acreage of the property offered at públic sale by the partitioners. To set aside a sale made under such circumstances would in effect penalize purchasers at a judicial sale for their diligence and prudence and reward sellers for their failure to ascertain facts as available to them as to the purchasers. Clearly, the apparent discrepancy in acreage here warranted an independent investigation by the sellers as well as by potential purchasers.

We do not agree with appellee's argument that the mistake in this case was that "made by the Court in the selling of the property." Both parties to the partition suit were represented by counsel, and the court's decree ordering a sale and its decree confirming that sale were "asked for" by counsel. When Parker and Jones took no action after the Commissioner in Chancery reported the apparent discrepancy in acreage, the trial court had a right to assume that they specifically wanted to make a sale in the gross and not by the acre, for otherwise the sellers would have obtained a current survey showing precise acreage, metes and bounds, and the identity of adjoining landowners. It is reasonable to believe that any apprehension by the sellers was not because the tract might contain twenty-six acres, but because it might contain only fifteen acres, and they wanted to be protected against any claim of a deficiency.

For the reasons stated, we will reverse the judgment of the court below and enter final judgment here for the appellants.

*Reversed and final judgment.*